**UNITED STATES of America,**
**Libelant,**

v.

**ONE 1963 CADILLAC HARDTOP, Motor**
**No. 63 G 007901.**

**No. 63-C-92.**

United States District Court
E. D. Wisconsin.

July 9, 1964.

See also D.C., 224 F.Supp. 210.

28

James B. Brennan, U. S. Atty., by Franklyn M. Gimbel and William J. Mulligan, Asst. U. S. Attys., Milwaukee, Wis., for libelant.

James M. Shellow, Dominic H. Frinzi, Milwaukee, Wis., for claimants Mrs. Eleanor Champan and Miss Barbara Barrett.

GRUBB, District Judge.

On February 10, 1963, the subject automobile was stopped by officers of the Milwaukee Police Department vice squad for violating a stop sign. The vehicle was being driven by one Richard O'Neil. An Alberta Daigre and one Matthew Crumble were passengers in the automobile. While one of the officers was talking to Richard O'Neil, Alberta Daigre was observed acting in an obnoxious and peculiar manner. One of the three officers ordered her and Matthew Crumble to get out of the automobile. While Crumble was alighting, he was observed dropping a small aluminum packet behind the car's front seat. A subsequent search recovered the aluminum packet which contained a green weed substance and a cigarette, both of which are alleged to contain contraband marijuana. Subsequently agents of the Federal Narcotics Bureau seized this car.

The United States of America initiated this libel proceeding against a certain 1963 Cadillac, seeking its forfeiture pursuant to the provisions of Title 49, Sections 781 and 782, of the United States Code of Laws. An answer was filed to this libel and complaint of the United States by Mrs. Eleanor Champan and Miss Barbara Barrett as claimants.

Claimants advance the following contentions in support of their claim that the subject automobile should not be forfeited:

1. Libelant has failed to prove that the subject automobile carried any contraband.

2. Claimants have shown the use of the car by the individuals found in the car at the time of apprehension was an unlawful use under Wisconsin law, and thus this constitutes a defense to any forfeiture.

The Government is charged with the burden of showing probable cause for the institution of this forfeiture proceeding. Once they have shown such probable cause, the claimants bear the burden of proof. United States v. One 1949 Pontiac Sedan, 194 F.2d 756 (7th Cir. 1952). The burden is shifted upon the claimants by virtue of Section 784 of Title 49 U.S.C.A., which provides:

"All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the customs laws; * * * shall apply

to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, * * *."

Section 1615 of Title 19 U.S.C.A. provides:

"In all suits or actions brought for the forfeiture of any * * * vehicle, * * * where the property is claimed by any person, the burden of proof shall lie upon such claimant; * * * *Provided*, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, * *."

Once probable cause is shown, the claimants must show by a preponderance of the evidence either that the alleged contraband is in fact not contraband or that the vehicle was unlawfully in the possession of another. See also: Associates Investment Company v. United States, 220 F.2d 885 (5th Cir. 1955); United States v. Andrade, 181 F.2d 42 (9th Cir. 1950).

Probable cause is less than prima facie legal proof and no more than a reasonable ground for belief in guilt. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Hite v. Western Maryland Railway, 217 F.2d 781 (4th Cir. 1954). If the facts are of such a nature as to support a reasonable belief of a violation of a statute, probable cause has been shown. United States v. One 1949 Pontiac Sedan, 194 F.2d 756 (7th Cir. 1952).

In this case two of the arresting officers testified that in their experience as vice squad officers, narcotics were commonly found similarly wrapped in aluminum foil. Matthew Crumble admitted to Officer Randa at the time of the arrest that the substance contained in the aluminum packet was marijuana. The chief chemist for the City of Milwaukee testified as to certain tests which he ran on the seized items. These were tests prescribed in a pamphlet called *Methods of Analysis for Alkaloids, Opiates and Synthetic Drugs* which was published by the United States Treasury Department in November 1956 (Exhibit 3). The conclusion of the chemist was that the seized items were definitely marijuana. However, in response to a question on cross-examination, this witness was unable to say whether the suspect items were part of the plant Cannabis sativa L. Section 4761 of Title 26 of the United States Code defines contraband marijuana as all parts of the plant Cannabis sativa L. Proctors for claimants introduced no testimony of their own which showed that the items seized were not illegal contraband marijuana.

If this were a criminal case where the Government bears the burden of proving its case beyond a reasonable doubt, there is no question that they failed to sustain such a burden. If this were the ordinary civil case, there might be a considerable question whether the plaintiff has met the required burden of establishing a prima facie case. However, the Government is not charged with either of the foregoing burdens. The Court is convinced and finds that the Government has met its burden of showing probable cause to institute this libel. Claimants have not shown by a preponderance of the evidence that the seized items were not contraband. In fact, they have introduced no testimony indicating that the items were anything but contraband marijuana. They have failed to sustain their burden of proof on this point. The mere fact that the chemist was unable to identify the items as part of the plant Cannabis sativa L. does not negate the fact that the Government had probable cause to believe the items were contraband marijuana. The experienced vice squad officers believed it was marijuana both from its appearance, and from the container in which it was wrapped. Matthew Crumble told the officers that it was marijuana. The chemist ran certain prescribed tests, none of which were impeached, and concluded that it was marijuana. All of these facts add up to a reasonable belief that the items were contraband marijuana and that the law had been violated. This chemist was not a botanist. He applied tests pre-

scribed by the United States Treasury Department, and the results showed the items to be marijuana. It is immaterial that he could not make a botanical distinction between Cannabis sativa L. and Cannabis indicus.

Claimants' second contention is that the subject automobile comes within the statutory exception of unlawful use. Section 782 of Title 49 U.S.C.A. provides:

> " * * * *Provided further,* That no * * * vehicle, * * * shall be forfeited under the provisions of this chapter by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such * * * vehicle, * * * was unlawfully in the possession of a person who acquired possession thereof in violation of the criminal laws of the United States, or of any State."

The subject automobile was given to claimant Barbara Barrett by one Oscar Rohr in October of 1962. In January of 1963, Barbara Barrett gave this car to her mother, claimant Mrs. Eleanor Champan. Mrs. Champan testified that thereafter she frequently gave permission to her daughter to drive the car but instructed her not to allow anyone else to drive it. Mrs. Champan was residing in Waukesha at the time, and Barbara Barrett was residing in Milwaukee. Proctors for claimants contend that since Mrs. Champan, the legal owner of the car, instructed her daughter not to let anyone else use the car, the use by Richard O'Neil and Matthew Crumble constituted a violation of Section 943.23 of the Wisconsin Statutes, commonly known as the "joy-riding statute." Section 943.23 provides:

> "*Operating vehicle without owner's consent.* Whoever intentionally takes and drives any vehicle without the consent of the owner may be fined not more than $1,000 or imprisoned not more than 5 years or both."

Mrs. Champan vested apparent authority to use the car in her daughter. In fact, she had little knowledge as to what her daughter did with the car or where she took it. Her instructions to her daughter limiting the use of the vehicle were completely unknown to third parties. Her daughter may have violated her authority, but it would be inconceivable to hold that one who used the car pursuant to her permission has committed a criminal act. The language of the statute requires this conclusion. Section 943.23 is cast in language very similar to that adopted in the theft statute, Section 943.20, and thus imports that something in the nature of a trespassory act is required. Thus, in State v. Mularkey, 195 Wis. 549, 218 N.W. 809 (1928), the defendant hired an automobile for a short trip, but in violation of the agreement, the automobile was taken on further and then abandoned. The extra driving was without the consent, permission, or knowledge of the owner. The Supreme Court held that the extra driving did not violate the Wisconsin joy-riding statute since "the mere unauthorized or extended use of such a vehicle by one who has lawfully obtained the consent of the owner to its taking for use * * * is not a violation of this statute; * *." (Page 551, 218 N.W. page 810.) By analogy, in the instant case the automobile may well have been obtained by Richard O'Neil or Matthew Crumble with the permission of Barbara Barrett.

█ There is nothing in the record showing that Barbara Barrett did not give anyone permission to use the vehicle. The fact that she may have ignored the instruction of the owner and permitted the use of the automobile in a manner not agreed upon cannot logically impose the necessary criminal intent required by the statute on an innocent third party. Implicit in the statute is the requirement that the taker have the intent to temporarily deprive the owner of his automobile without his consent. Claimants have not shown that this automobile was

taken from either one of them without their consent. The only proof adduced is that the legal title holder had given permission only to her daughter to use the automobile. Proctors for claimants rely upon an early Massachusetts case— Commonwealth v. Coleman, 252 Mass. 241, 147 N.E. 552 (1925)—for the proposition that a violation of the joy-riding statute occurred in this instance. There the defendant was found guilty under an indictment which, in the words of the statute, charged that he "did use a motor vehicle without authority." The court there stated at page 553 of 147 N.E.:

> " * * * The use may be 'without authority,' although one is innocent of guilty intent and ignorant of the lack of authority to use the vehicle on the part of the person in control. * * * "

This case is not applicable to the Wisconsin joy-riding statute. The Massachusetts statute did not require any guilty intent. The Wisconsin statute does.

Proctors for claimants also cite a host of cases involving litigation concerning the "omnibus clause" in automobile insurance policies under which persons who use the automobile with the consent of the owner are insured under the policy. These cases have no application to the problem before this Court. The fact that the user received his permission from a permittee who did not have authority to grant the use to another, thus causing the policy not to cover the ultimate user, is an entirely different proposition from charging such user with a criminal violation.

The burden was upon the claimants to sustain both of their contentions by a preponderance of the evidence. They have failed to meet this burden. Therefore, the subject automobile shall be forfeited to the United States of America.

The foregoing constitutes the Court's findings of fact and conclusions of law. The clerk of court is directed to enter judgment in conformity with the above.