Bernard KAPLAN and Alberto Berumen,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 20728.

United States Court of Appeals
Ninth Circuit.

March 1, 1967.

Rehearing Denied April 18, 1967.

**896**

Maurice Inman, Jr., Gary Goldman, Alexander, Inman & Fine, Los Angeles, Cal., for appellants.

Manuel L. Real, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Crim. Div., Gerald F. Uelmen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JONES, Judge, U. S. Court of Claims, and BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from convictions after a court trial of a five count indictment charging appellants and one other codefendant in Count I with conspiracy to pass counterfeit money (18 U.S.C. §§ 371, 472); Berumen in Counts II and IV with passing counterfeit money (18 U.S. C. § 472); Kaplan with aiding and abetting the passing of counterfeit money by the codefendant in Count III; and Kaplan and the codefendant with possession and concealment of counterfeit money in Count V.

All defendants were acquitted on Count I, Berumen convicted on Counts II and IV, and Kaplan convicted on Counts III and V and the codefendant Reinhardtsen acquitted on both substantive counts.

Jurisdiction below rested on 18 U.S.C. § 3231. It exists here pursuant to 28 U.S.C. § 1291.

Counsel representing the successful defendant below now represents both appellants. He urges six grounds for reversals, with heavy emphasis on the first two. They are:

1. Appellants were denied effective assistance of counsel due to an inherent conflict of interest;

2. The trial court erroneously examined certain reports of government agents;

3. The denial of the defendant Kaplan's motion to suppress six $100 counterfeit bills invalidated his conviction under Count V;

4. Kaplan could not be guilty of aiding and abetting under Count III as a matter of law;

5. The denial of inspection of defendants' statements "in hands of the government" was error; and

6. Appellant Kaplan was denied due process of law.

We consider each alleged error in turn.

### I.

 Appellants are entitled to meaningful representation by counsel, without any possibility of conflict of interest present between any two of two or more defendants. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942), Lugo v. United States, 350 F.2d 858, 859 (9th Cir. 1965). In determining this question, the trial court must be able, and be freely permitted, to rely upon counsel's representations that the possibility of such a conflict does or does not exist. The necessary adequate representation by an attorney which the law requires implies that the court may rely on the solemn representation of a fact made by such attorney as an officer of the court. The court may go further into the factual situation if he desires, but is under no original or continuing obligation to do so. Having determined the facts, he must then rule on the legal issues.

On March 29, 1965, Mr. Beckler, counsel in the court below representing Mr. Berumen and Mr. Kaplan, represented to the trial judge there was a recently discovered possible conflict of interest in his joint representation.[1] He failed to disclose what it was. (Supp.Tr. VIII and IX.) [2]

On March 29, 1965, a three day continuance to April 1st, 1965, was ordered (Supp.Tr. XIII) and a requested three weeks continuance denied. When counsel for appellants, once a longer continuance was denied, agreed he could be ready "today," a continuance of one day was ordered by the court.[3]

When the case was called for trial on March 30, 1965, Mr. Beckler announced for his clients: "The defendant Kaplan and defendant Berumen are ready to proceed." (Tr. p. 4.)

After careful separate waivers of a jury trial (Tr. pp. 4–10), counsel for the government raised the problem whether there then existed any conflict or apparent conflict of interest. Mr. Beckler stated the conflict had been "limited to the possibility and contingency of a jury trial. Now that that matter has been disposed of, the conflict of interests— that is my representation of Mr. Berumen and Mr. Kaplan—is now satisfied.

1. The indictment was filed January 13, 1965. A cash bond for $500 had been filed for defendant Kaplan before the United States Commissioner on December 21, 1964, and a surety bond for defendant Berumen filed the same day. On January 25, 1965, counsel Beckler filed appearances to represent the two appellants, when they were arraigned. Not guilty pleas were entered February 8, 1965, and trial set for March 29, 1965.

On March 9, 1965, attorney Beckler had filed a motion for discovery and inspection. (We note, parenthetically, that this motion sought to inspect "any and all statements made by defendants at any time or place, to officers of the United States with respect to the subject matter of the instant case, whether or not reduced to writing and/or signed by said defendants, as to which some form of recordation, note or memorandum exists, incorporating, embodying or reproducing the substance and content of such state-

ment.") See alleged error VI, supra. The motion was set for hearing on March 29, 1965, prior to the actual trial.

Thus, counsel for appellant in the district court had represented each of them, certainly for sixty days, and possibly for ninety days, prior to his "discovery" of any conflict of interest.

2. In the week preceding Monday, March 29th, 1965, Kaplan had indicated he would move for a continuance based on illness. (Supp.Tr. XII, ll. 13–20.)

3. Supp.Tr. p. XIV, l. 16 to p. XV, l. 5 (March 29, 1965).
 "THE COURT: Are you ready to go to trial then tomorrow morning?
 "MR. BECKLER: Ready right now. Well, ready tomorrow morning. I'll call someone today and we will go over it tomorrow.
 "THE COURT: Very well * * *."
 (Supp.Tr. XV, ll. 6–11.)

In short, there is no conflict." (Tr. pp. 12, 13.)

The trial court then satisfied himself of two things: (a) that the question of whether or not a jury trial should be had was the sole issue or conflict between the defendants, and (b) that it had been settled, not only to the satisfaction of the defendants' counsel, but to the complete satisfaction of each defendant. (Tr. p. 13, l. 1 to p. 14, l. 5.)[4]

■ Unlike Glasser v. United States, supra, and other law cited by appellants, the record clearly and convincingly proves there was an intentional and intelligent waiver by each defendant of separate counsel. The trial judge here did precisely what Glasser requires—made a "clear record" of a "proper waiver," i. e., a waiver "knowingly and intentionally made."

■ Just as we cannot speculate as to whether a conflict of interest, once it exists, would affect a trial (we can assume arguendo that it would), neither can we speculate that a right, once intelligently and knowingly waived, should not have been waived; or speculate whether or not there could have existed some other possible conflict of interest not factually disclosed, or even suggested, by a careful reading of the record before us. Appellants' concession is of importance.[5]

■ We find no merit in appellants' position on alleged Error I.

## II. Court's Examination of Statements

■ When Agent Tomsic was called to the stand, counsel for the government presented certain documents to counsel for defendants. Codefendant's counsel requested a ten minute recess to read the statements. These documents were referred to and described as follows:

"MR. BALABAN: At the request of Mr. Inman, I, in advance of trial, presented him with certain documents which were the Jencks Act statements of the witnesses who had previously testified. Despite the fact that we are not required to turn over the statements until the witness has testified, I did not believe that we would get to Mr. Tomsic by this afternoon and I planned to give Mr. Tomsic's Jencks Act statements to defense counsel this evening in anticipation of Mr. Tomsic testifying tomorrow. I have just given them to them, handed to them the statements of Agent Tomsic prior to him taking the stand.

MR. BECKLER: I agree. There is no question. We appreciate this, and,

---

4. "Now that that matter has been disposed of, the conflict of interests—that is my representation of Mr. Berumen and Mr. Kaplan—is now satisfied. In short, there is no conflict. I feel I can adequately represent both of them and intend to, and I believe it is Mr. Kaplan's desire that I proceed and go ahead with his representation during this matter. "THE COURT: Very well. I will inquire of Mr. Kaplan, are you aware of that position? "MR. KAPLAN: Yes, your Honor. "THE COURT: That might have been of some moment in the event of a jury trial, and you have discussed that fully? "MR. KAPLAN: Yes, we have resolved anything that might have come up. "THE COURT: Do you feel you have been fully advised as to all matters and you are fully satisfied then to proceed in trial with Mr. Beckler? "MR. KAPLAN: Yes, I sure have.

"THE COURT: Mr. Berumen, I would like to ask the same thing of you. You understood this? "MR. BERUMEN: Yes, we talked it out and it is all straightened out. "THE COURT: You think now that without a jury trial there would be no occasion for any conflict or any conflict of any moment? "MR. BERUMEN: That is right. "THE COURT: And you are quite willing at this time to proceed in trial, represented by Mr. Beckler, having in mind that he also represents Mr. Kaplan? "MR. BERUMEN: Yes, sir."

5. Appellants' counsel concedes in their Opening Brief: "While appellants admit that the record has not, and necessarily cannot, reflect what the actual conflict in interest was * * *." (O.B., p. 24.)

of course, Mr. Balaban is correct. We are not entitled to this until the conclusion, but it is lengthy, your Honor. I think we would save time by taking them and reading them now." (R.T. p. 154, l. 17 to p. 155, l. 7.)

The court then requested to see a copy of the statement. After identifying the witness on the stand, government counsel stated: "At this time, your Honor, I would like to state this defendant (sic) is only offered on the motion itself." (Tr. p. 159, ll. 12–14.)

This reference to "a motion" was to the pending motion of defendant Reinhardtsen to suppress. (See note 1, supra.) On March 15, 1965, it had been continued to the date of trial. (C.T. p. 105.)

Before Tomsic testified, the question was raised whether the court, as the trier of fact, could see the Jencks Act statements, delivered to counsel for the defendants by the government prior to the time any request was made on the record by counsel for defendants for their production. This question was never resolved or ruled upon. (Tr. p. 159, l. 17 to p. 162, l. 7.)

Counsel for appellants stated:

"[The Jencks problem] hasn't arisen yet and I am wondering if the court in reading these is somewhat premature. I have no motion even. I can't very well move to strike the court's reading of these certainly, so at this time I will just sit down."

No counsel for any defendant made any objection, or motion of any kind. Counsel for the codefendant conceded the delivery of the statements was "proper." (R.T. 160, ll. 21–23.)

Appellants state that they "strenuously questioned the right of the trier of facts to examine such documents without there being a Jencks motion made."

We flatly disagree. It was at best a half-hearted inquiry. When no protest or objection is made, no motion to strike made, no mistrial urged, and no record of any kind laid, it is inaccurate to describe such conduct as "strenuous questioning."

Neither can we agree that the trial judge commenced reading the statements "before either counsel was aware of the actions of the court." (Appellants' Brief, pp. 31–32.)

The unchallenged record clearly discloses Mr. Inman, counsel for the acquitted defendant, *requested* the Jencks Act statements of the government. (Tr. p. 154, l. 17 to p. 155, l. 2.) Mr. Beckler, counsel for these appellants "agreed" and "appreciated" the courtesy of government counsel, and stated: "We are not entitled to this until the conclusion [of Tomsic's testimony] but it is lengthy * * *. I think we would save time by taking them and reading them now." (Tr. p. 155, ll. 4–7.)

A recess was then called so defense counsel could read the statement, as they requested. Only then did the court look at the document.

The Tomsic statement falls within item three of the motion to suppress (C.T. p. 13), which motion the court then had under consideration (R.T. p. 158). The only purpose for Tomsic's testimony (R.T. p. 175, l. 22; 179) was to aid the court in its determination of this motion.

We conclude not only that the perusal of the statements by the court was necessary and proper in this case in view of the pending motions; but that counsel for defendants, by his silence and inaction, inferentially waived any objections to such an examination.

### III.

We can deal more quickly with the other errors urged. The third had to do with the admission of the six $100 counterfeit bills.

These were found in the white Chevrolet with Ohio license plates and a "dented" front left fender. (Tr. p. 171, ll. 6–9) after its seizure.

No search was made until *after* Tomsic had verified the fact the same vehicle had been used to transport a counterfeit $100 note to the Christmas tree lot, while Kaplan was driving. (R. T. p. 172, l. 1 to p. 173, l. 19.) He then had reasonable cause to believe the vehi-

cle could be properly seized as a vehicle used to transport contraband. 49 U.S.C. §§ 781(a) (3) and (b) (3); 782. Burge v. United States, 342 F.2d 408 (9th Cir. 1964). He did seize it.

We distinguish Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964) on the same grounds as did the eighth circuit in Drummond v. United States, 350 F.2d 983 (1965), cert. den. Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542, Cf. Armada v. United States, 319 F.2d 793 (5th Cir. 1963), cert. den. 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1964), United States v. One 1963 Cadillac, 231 F.Supp. 27 (D.C.Wis.1964).

## IV.

■ We need not consider appellants' point four (Kaplan's guilt on Count III— aiding and abetting the unconvicted co-defendant) in view of Kaplan's conviction on Count V, with its concurrent sentence. But see: Rooney v. United States, 203 F. 928, 932 (9th Cir. 1913).

## V.

■ We find no error in the denial of appellants' motion to have government summaries of defendants' statements given before trial produced for appellants' use. No such *statements* were offered in evidence against defendants, or used at the trial against them in any way. Appellants demanded in paragraph five, six and seven of their motion [6] the production of written memoranda made by government agents of oral statements made by defendants not shown to nor signed by defendants. They were not records "belonging" to appellants. Rule 16, Fed.R.Crim.P., United States v. Murray, 297 F.2d 812, 819 (2d Cir. 1962), cert. den. 369 U.S. 828, 82 S.Ct. 845, 7 L. Ed.2d 794 (1962), Schaffer v. United States, 221 F.2d 17, 19 (5th Cir. 1955), Shores v. United States, 174 F.2d 838, 843–845 (8th Cir. 1949). Cf. Holt v.

United States, 272 F.2d 272, 277 (9th Cir. 1959).

## VI.

We agree with the answer made by the government to appellants' sixth alleged error (that appellant Kaplan was denied due process of law by use of admissions made by him when first contacted and before his arrest).

■ Appellants concede that appellant Kaplan was properly advised of his constitutional rights before he was interviewed by Agent Tomsic on December 19, 1964 (i. e., that he did not have to make any statements; that any statements he made could be used against him in court, and that he was entitled to have an attorney. (R.T. p. 239.)) Although the warning did not follow the form required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (re the right to an attorney, though indigent, Id., p. 471, 86 S.Ct. 1602), that ruling has no application to cases tried prior to June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 882 (1966).

■ A repetition of this warning on December 20th, 1964, was not required under either the *Miranda* decision or the ruling of Escobedo v. State of Illinois, 378 U.S. 473, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). As stated in *Miranda,* 384 U.S. 436, 477, 86 S.Ct. 1602, 1629:

> "The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way."

Similarly, the *Escobedo* ruling involved a situation where:

> "The existence of the crime was apparent. The police were seeking to identify the offender. The accused had been taken into custody." Kohat-

---

6. The government conceded and complied with all demands for inspection made by the appellants except those numbered 5,

6 and 7. The motion was denied as to them. (Supp.Tr. p. IV.)

su v. United States, 351 F.2d 898, 901 (9th Cir. 1965), cert. den. 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966). Accord: Irwin v. United States, 338 F.2d 777 (9th Cir. 1964). Appellant Kaplan was *not* in custody at the time these admissions were made; in fact, he was allowed to return home that night. (R.T. p. 253.) [7]

Finding no error in any of the points urged, we affirm.

7. The government's brief continues: "The statement of appellants that the Federal Agents 'had him come down to the federal garage purportedly to pick up certain personal property, but actually to apparently see if he would do anything about the counterfeit bills' (Opening Brief of Appellants, p. 46) is totally without support in the record. It was established through undisputed testimony that appellant Kaplan himself requested and arranged this meeting with the Federal Agents [R.T. 240–241]." (Appellee's Brief, p. 32.)