AMENDED OPINION

**Vincent Ray WILLIS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent, Appellee.**

**No. 78–2361.**

United States Court of Appeals, Ninth Circuit.

Nov. 5, 1979.

As Amended on Denial of Rehearing and Rehearing En Banc March 13, 1980.

**1202**

John C. Lowe, Atty., Lowe & Gordon, Ltd., Charlottesville, Va., for petitioner-appellant.

Deanne H. Smith, Asst. U. S. Atty., Los Angeles, Cal., for respondent, appellee.

Before WALLACE and HUG, Circuit Judges, and TEMPLAR,* District Judge.

WALLACE, Circuit Judge:

Willis appeals from the denial of his motion for post-conviction relief filed pursuant to 28 U.S.C. § 2255. He and co-defendant Evanoff were convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Willis contends that he was denied effective assistance of counsel because he and Evanoff were represented by members of the same law firm.[1] Specifically, Willis argues that he should be granted a new trial because conflict of interest prevented his attorney from presenting his most effective defense and because the trial judge failed to obtain his waiver of potential conflicts of interest. We affirm.

I

■ Willis first asserts that his attorney, Bitkower, showed a lack of independent judgment in failing to develop a plausible separate defense.[2] Before turning to the factual support for this assertion, it is im-

portant that we clarify the law of the Ninth Circuit in light of the Supreme Court's recent decision in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

A. The Law

■ While it is established that criminal defendants have a Sixth Amendment right to the assistance of counsel unburdened by conflicting loyalties, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it is also clear that there is no per se rule against joint representation. *Holloway v. Arkansas, supra,* 435 U.S. at 482–83, 98 S.Ct. 1173. We have held that "until an actual conflict is shown to exist or can be reasonably foreseen an attorney may, in good faith, represent both defendants." *Kruchten v. Eyman*, 406 F.2d 304, 311 (9th Cir. 1969), *vacated and remanded on other grounds*, 408 U.S. 934, 92 S.Ct. 2853, 33 L.Ed.2d 748 (1972). This standard recognizes that joint representation can be advantageous to co-defendants, *Holloway v. Arkansas, supra,* 435 U.S. at 482–83, 98 S.Ct. 1173, and, equally important, that "defendants who retain counsel also have a right of constitutional dimensions to representation by counsel of their own choice." *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969).

■ We recently affirmed "[t]he long established rule in this circuit . . . that to prevail on [a conflict of interest claim], the defendant has the burden of establishing that the joint representation in fact created an actual conflict of interest and prejudiced her defense." *United States v.*

---

* Honorable George Templar, United States District Judge, District of Kansas, sitting by designation.

1. The parties appear to agree that for purposes of conflict of interest analysis it makes no difference whether Willis and Evanoff were represented by a single attorney or by members of the same firm.

2. In addition, Willis argues that Bitkower's failure to negotiate a plea bargain or seek a sepa-

rate trial for Willis manifested the alleged conflict. These additional arguments are so closely related to his plausible defense argument that they will not require independent analysis.

Willis also contends that Bitkower's retention of another lawyer to handle the initial appeal without Willis' knowledge or consent evidenced a conflict. This conduct is not relevant to the conflict of interest claims considered here.

*Kutas,* 542 F.2d 527, 529 (9th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977). Thus, the defendant must demonstrate "that specific prejudice has resulted to him from the alleged conflict of interest." *United States v. Eaglin,* 571 F.2d 1069, 1086 (9th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). *See also Davidson v. Cupp,* 446 F.2d 642 (9th Cir. 1971) (per curiam).

Willis asserts that insofar as the Ninth Circuit standard requires a showing of prejudice in addition to conflict of interest, it has been modified by the Supreme Court in *Holloway v. Arkansas, supra.* In addition to *Holloway,* Willis relies on our formulation of the standard in *Kruchten v. Eyman, supra,* 406 F.2d at 311, which states that "if a conflict of interest actually exists the courts will not weigh or determine the degree of prejudice which may result before granting relief." He asserts that, if the *Kutas* and *Kruchten* formulations reflect a difference in the applicable test, *Holloway* should be read as having affirmed *Kruchten.*

We do not read *Kutas* as being inconsistent with *Kruchten,* nor do we believe that *Holloway* requires modification of the Ninth Circuit test. The standard for determining whether a conflict of interest existed is designed to ensure that defendants receive adequate representation yet prevent them from second-guessing on appeal their attorney's trial strategy. Whether the test is formulated in terms of conflict of interest or prejudice, the issue involves "how strong a showing of conflict must be made, or how certain the reviewing court must be that the asserted conflict existed, before it will conclude that the defendants were deprived of their right to the effective assistance of counsel." *Holloway v. Arkansas, supra,* 435 U.S. at 483, 98 S.Ct. at 1178. In this circuit, we require a factual showing on the record that a conflict existed, for "while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest . . ., neither can we create a conflict of interest out of mere conjecture as to what might have been shown." *Lugo v. United States,* 350 F.2d 858, 859 (9th Cir. 1965). *See also Carlson v. Nelson,* 443 F.2d 21, 22 (9th Cir. 1971) (per curiam) (Conflict issues are "not to be decided on the basis of speculation, but by a considered determination of whether, in fact, a conflict of interest existed.").

*Holloway* did not address the issue of the proper test for determining whether a defendant was denied effective representation because of a conflict of interest. Indeed, it specifically reserved the question. *Holloway v. Arkansas, supra,* 435 U.S. at 483–84, 98 S.Ct. 1173. In *Holloway,* the Court determined that the trial court had erred in requiring joint representation after timely motion by counsel for appointment of a separate attorney on conflict of interest grounds. The question was therefore presented whether a harmless error test may be applied when a trial court "improperly permits or requires joint representation." 435 U.S. at 487, 98 S.Ct. at 1180. After reviewing conflicting authorities, the Court held "that whenever a trial court improperly requires joint representation over timely objection reversal is automatic." *Id.* at 488, 98 S.Ct. at 1181. While the Court in *Holloway* "was concerned with whether a constitutional violation was subject to the harmless error rule," *United States v. Cox,* 580 F.2d 317, 321 n.5 (8th Cir. 1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979), the question here is "whether there was a constitutional violation." *Id.* Thus, *Holloway* does not resolve the issue presented to us.

The Court in *Holloway* rejected a harmless error rule in part because it "would not be susceptible of intelligent, even-handed application." 435 U.S. at 490, 98 S.Ct. at 1182. The evil in joint representation of conflicting interests "is in what the advocate finds himself compelled to *refrain* from doing," making it "difficult to judge intelligently the impact of a conflict on the attorney's representation of a client." *Id.* at 490–91, 98 S.Ct. at 1182 (emphasis the Court's). Arguing in effect

that "[t]his reasoning seems as pertinent to multiple representation that is not forced on counsel as it does to the *Holloway* facts," Note, *Multiple Criminal Representation Examined*: *Holloway v. Arkansas*, 40 Ohio St.L.J. 251, 268 (1979), Willis would have us conclude that to require a showing of conflict or specific prejudice in the record is inconsistent with the Court's concern about the "unguided speculation" inherent in such inquiries. 435 U.S. at 491, 98 S.Ct. 1173. There is an important distinction between *Holloway* and the instant case, however. In *Holloway*, after the Court had concluded that the trial judge improperly required joint representation over counsel's objection, the question was whether the wronged defendant should bear the onus of the "unguided speculation" frequently involved in searching the record for evidence of specific prejudice. The Court concluded on these facts that a per se reversal would be required. In the case before us, retained counsel assured the trial judge that there was no conflict of interest. Our question is whether we will find a conflict despite these assurances. Moreover, whatever rationale the Court employed for its holding in *Holloway*, its reservation of the issue concerning proof of conflict of interest leaves us with the duty to follow the decisions of this circuit unless they are overruled.

Our interpretation of *Holloway's* effect is confirmed by the Second Circuit, which has required defendants to show "some specific instance of prejudice, some real conflict of interest, resulting from a joint representation" before a constitutional violation is found. *United States v. Lovano*, 420 F.2d 769, 773 (2d Cir.), *cert. denied*, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970). Since *Holloway*, that circuit has concluded that its own precedents will continue to determine the appropriate conflict standard. *Salomon v. LaVallee*, 575 F.2d 1051, 1053 n.3 (2d Cir. 1978). *See also United States v. Steele*, 576 F.2d 111, 112 (6th Cir.) (per curiam), *cert. denied*, 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978); *Perez v. Harris*, 459 F.Supp. 1141, 1144 (S.D.N.Y. 1978).

## B. *The Facts*

We have stated that "decisions dealing with the question of whether or not a conflict of interest existed have turned on the particular fact situation of each case." *Peek v. United States*, 321 F.2d 934, 944 (9th Cir. 1963), *cert. denied*, 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964). We now focus on Willis' main contention that his attorney failed to pursue a plausible defense because of conflict of interest. Customs officers overheard Willis tell the manager of a Newport Beach, California, boat ramp that he had launched a boat that morning. Later the officers say Willis and Evanoff loaded a low-riding, 25-foot boat with covered portholes onto a trailer and towed the trailer out of the water. The tires of the trailer were extremely low.

The Customs officers then questioned Willis and Evanoff. They asked Evanoff if he had the keys to the locked cabin. The Customs officer testified that Evanoff searched his pocket and then secured the keys from Willis. Both Willis and Evanoff testified that Willis did not produce the keys. Willis did testify that when Evanoff asked him if he had the keys, he hit his pocket and said "no." Eight hundred and sixty pounds of marijuana were subsequently found in the cabin.

Willis claims that because Evanoff owned the boat upon which the marijuana was found, as well as the truck and trailer used to bring the boat out of the water, his attorney should have developed a separate defense of lack of knowledge or lack of constructive possession. Instead, the attorneys representing Willis and Evanoff jointly sought only to suppress the marijuana discovered when Customs officers searched Evanoff's boat. When their motion to suppress failed, they stipulated to the facts developed at the suppression hearing and waived a jury trial, apparently to move on to an appeal of the suppression ruling.

Willis claims that his proposed defense would have been bolstered by the conflicting testimony at the suppression hearing on the question whether it was Willis or Eva-

noff who supplied Customs officers with the keys to the locked cabin. Willis asserts that his alleged possession of the key to the cabin is the only evidence linking him to the marijuana. He concludes that his attorney's failure to develop this defense and exploit the conflicting accounts resulted from a desire to avoid casting all the blame on Evanoff.

Willis has failed to show an actual conflict of interest. One might speculate that Willis' defense strategy was rooted in a conflict of interest or that he would have fared better with a separate defense. But the evidence permits no more than mere speculation.

■ Exploitation of the conflicting testimony about who had the key to the locked cabin would not necessarily have led to a more effective defense. Willis asserts that the key was all that linked him to the marijuana. Even if that were true, it is not clear that the Customs officers' testimony of Willis' actual possession of the key raised a stronger inference of constructive possession of the marijuana than his own admission that he felt for the key in his pockets. Neither actual possession nor his own testimony demonstrating Willis' belief that he, at some time, had possession of the key, would prove beyond a reasonable doubt that Willis had access to, and knew about, the marijuana, but either would provide an inference that he did. Furthermore, Willis incorrectly asserts that there was no other evidence linking him to the marijuana. The Customs officer testified that about noon on the day of the arrest he overheard Willis tell the boat ramp manager that Willis owed him a fee for having launched a boat that morning before the office opened. This testimony, together with the inferences drawn from the unusual boat weight caused by 860 pounds of marijuana, secreted in a locked cabin with covered windows, tends to rebut any suggestion that Willis was merely helping Evanoff bring his boat out of the water. The strength of the case against Willis suggests that counsel may have simply concluded that the suppression claim was Willis' only available defense.

While it might be argued that Willis had nothing to lose by raising the proposed defense, we are unable to conclude that only impermissible considerations of conflicting loyalties can explain counsel's decision to concentrate his energies on the defense with which he thought Willis had a chance to win.

■ More importantly, absent objective evidence that conflict existed, we cannot evaluate the trial strategy of Willis' attorney without knowing what the attorney knew of Willis' possible defenses prior to trial. It is not clear that Willis' attorney failed to provide Willis with conflict-free legal advice based on all the evidence available to him, including what he had learned from Willis. Although Willis asserts that his attorney failed to ask him questions that might have developed his separate defense, we believe that "[t]o permit a *post hoc* judicial inquiry into earlier privileged attorney-client communications whenever a defendant seeks to set aside his conviction on grounds of conflict of interest . . . would be virtually to outlaw joint representation, since the temptation to attack his counsel's unsuccessful strategy would be too great for the disappointed client to resist . . . ." *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973).

■ Similarly, "[a]bsent objective proof we cannot assume that a lawyer representing more than one client would act in violation of the Code of Professional Responsibility, much less ignore the opportunity to introduce proof which might acquit one defendant but not the other." *Id.* Since Evanoff had no separate defense, and apparently was prepared to rest his case entirely on the suppression hearing, it is not even clear that it would have conflicted with Evanoff's best interests to have Willis deny having knowledge or possession of the marijuana.

The kind of showing required by this circuit is illustrated by *United States v. Marshall,* 488 F.2d 1169 (9th Cir. 1973), which Willis argues is analogous to the case before us. Marshall was the driver of a van owned by co-defendant Burkle which contained a large amount of methampheta-

mine. The attorney who defended Marshall and Burkle against a charge of possession with intent to distribute failed to develop a line of defense for Marshall and argued an entrapment defense on behalf of Burkle. Willis focuses on the court's willingness to surmise that Marshall's "only possible defense was that he was an innocent victim who was asked by Burkle to drive but did not know anything about illegal activities," 488 F.2d at 1191, as well as its conclusion that the possibility of such a defense created a conflict because it would have required Marshall to "put the whole blame on Burkle." *Id.* Willis argues that conflict is made apparent in his case by the fact that he, like Marshall, had a plausible defense that was not developed because that defense would have required Willis to put the whole blame on Evanoff.

Willis' analysis of *Marshall* ignores the additional factors that made conflict of interest obvious in that case. There the failure to develop Marshall's "only possible defense" could only have stemmed from a conflict of interest. There was no joint defense strategy since, as the court stated, Marshall had no conceivable claim of entrapment. 488 F.2d at 1191. Counsel's handling of Marshall's case thus amounted to no defense at all. Whereas Willis' attorney may have concluded, with some basis in reason, that seeking suppression of the evidence was the only defense available to Willis, there is no similar explanation for the·failure of Marshall's counsel to present any kind of defense. In addition, Mar-

shall's defense was specifically prejudiced, and the attorney's conflict made completely clear, when counsel failed to object to an entrapment instruction as to both defendants even though Marshall had raised no such defense. The court stated that "[t]his must have hopelessly confused the jury" and expressed shock that counsel failed to notice this "glaring error." *Id.*[3]

## II

We also reject Willis' contention that the district court failed to fulfill an alleged duty to inquire about possible conflicts of interest and obtain a knowing waiver of defendant's right to independent representation. "This court has previously held that failure of a trial court to advise co-defendants that they have a right to separate counsel, absent a showing in the record of conflicting interests, is not reversible error." *United States v. Christopher,* 488 F.2d 849, 851 (9th Cir. 1973). *See also United States v. Nystrom,* 447 F.2d 1350, 1351 (9th Cir.), *cert. denied,* 404 U.S. 993, 92 S.Ct. 542, 30 L.Ed.2d 545 (1971). Although we agree that it is good practice for a trial judge to make inquiry when the possibility of a conflict of interest seems apparent,[4] we have also held that the trial court "must be able . . . to rely upon counsel's representations that the possibility of such a conflict does or does not exist." *Kaplan v. United States,* 375 F.2d 895, 897 (9th Cir.), *cert. denied,* 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). *See also United States v. Steele, supra,* 576 F.2d at 112 (recogniz-

---

**3.** Willis' reliance on *Foxworth v. Wainwright,* 516 F.2d 1072 (5th Cir. 1975), is also misplaced. Although we believe that the evidence of conflict in that case was stronger than here, it is enough to point out that the court's reasoning in *Foxworth* allows for a finding of conflict of interest without a showing of actual prejudice. *See id.* at 1077 n. 7, 1079–80. The law of this circuit requires such a showing.

**4.** We recently expressed approval of the use of the warnings and inquiry that would be required by the proposed Federal Rules of Criminal Procedure, Rule 44(c). *United States v. Partin,* 601 F.2d 1000, 1006–1007 (9th Cir. 1979). In *Partin,* we also suggested that *Kaplan v. United States,* 375 F.2d 895 (9th Cir.), *cert. denied,* 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967), requires such a hearing

when there is some indication of a possibility of conflict of interest occurring. *United States v. Partin, supra,* 601 F.2d at 1007. In fact, the court in *Kaplan* held that the district court has no affirmative duty of inquiry though it approved of the inquiry that had led to waiver of any possible conflict in that case. *Kaplan v. United States, supra,* 375 F.2d at 898. At most, *Kaplan* only lends support to the generally accepted proposition that when the trial court determines or is advised that the possibility of conflict is more than remote, but is real and present, it should not allow joint representation without obtaining a knowing waiver from the defendant. Here the district judge did not make such a determination. *See* note 5 *infra.* We will not second-guess his judgment absent a showing of actual conflict in the record.

ing wisdom of conflict of interest hearing, but holding that Sixth Amendment does not require "a per se rule to this effect"). We have no basis for concluding that the district court should not have relied on counsel's representations in this case.[5]

AFFIRMED.

---

5. Willis places great stress on a colloquy between the trial judge and Willis' attorney. When asked if there was any conflict of interest, attorney Bitkower responded:

I do not perceive that there is a conflict of interest, your Honor. However, in all fairness to Mr. Willis, he is apprised of the fact that there is a slight, remote chance there is a conflict, and he is so aware of that fact and would waive any possible conflict of interest.

In *Kaplan v. United States, supra*, 375 F.2d at 897, we stated that criminal defendants are entitled to representation "*without any possibility* of conflict of interest present between any two . . . defendants." (Citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).) (Emphasis supplied.) While Willis does not press the argument, it might be contended that the district court improperly allowed joint representation because Willis' attorney acknowledged a possibility, albeit a remote one, of conflict. We believe that Willis' attorney adequately assured the court that there was no conflict of interest. The thrust of his statement was to the effect that no conflict was present, and his apparent equivocation appears to have been designed to display a willingness to allow the court to probe Willis on the matter. Although *Glasser* and *Kaplan* state that defendants are entitled to representation "without any possibility" of conflict, that language should be read with care. There are many degrees of "possibility," but it is clear that the Court in *Glasser* meant something like "significant possibility," as distinguished from absolute certainty. Every case of joint representation involves, in attorney Bitkower's words, at least a "slight, remote chance" of conflict. The question is whether there is a real possibility of conflict which would undermine counsel's effectiveness. For this reason, even under the hearing required in *Holloway*, the Court implicitly authorizes the trial judge "to ascertain whether the risk [of conflict is] too remote to warrant separate counsel." *Holloway v. Arkansas, supra*, 435 U.S. at 484, 98 S.Ct. at 1178–1179. *See also Kaplan v. United States, supra*, 375 F.2d at 898 n. 4 (inquiring of defendant whether there was "any conflict or any conflict of any moment"). We conclude that the district court properly relied on assurance of counsel that there was no conflict of which counsel was then aware and no significant possibility of any conflict developing.

We observe that questions pertaining to the nature of the trial judge's responsibility to insure a conflict-free representation were specifically reserved by the Supreme Court in *Holloway v. Arkansas, supra*, 435 U.S. at 483–84, 98 S.Ct. 1173.