862

Joseph William JANOVIC, Jr., Petitioner,

v.

Frank A. EYMAN, Warden, Arizona State Penitentiary, Respondent.

No. Civ–6305.

United States District Court
D. Arizona.

Dec. 1, 1967.

Darrell F. Smith, Atty. Gen. of the State of Arizona, for respondent.

Joe W. Contreras, Phoenix, Ariz., Leonard Lawrence, Chicago, Illinois, for petitioner.

## OPINION

CRAIG, District Judge.

In the above entitled cause petitioner filed his petition for writ of habeas corpus under Title 28 U.S.C. § 2254. It appearing that all state remedies had been exhausted, the petition for writ of habeas corpus was received by this Court.

Petitioner pleaded guilty to the crime of first degree murder in the Superior Court of the State of Arizona in and for the County of Yuma. An appeal was taken to the Supreme Court of Arizona from the judgment of conviction and the sentence of death. Following a coram nobis hearing, ordered by the Supreme Court of Arizona to make findings of fact and conclusions of law, the Arizona Supreme Court affirmed the conviction.

State of Arizona v. Janovic, 101 Ariz. 203, 417 P.2d 527 (1966). The Supreme Court of the United States denied certiorari. Janovic v. Arizona, 385 U.S. 1036, 87 S.Ct. 777, 17 L.Ed.2d 683 (1967). An order to show cause, pursuant to the petition for writ of habeas corpus was granted by the United States District Court for the District of Arizona on March 31, 1967. A hearing, pursuant to that order was held on September 28–29, 1967.

The facts, as developed in the earlier proceedings, are that petitioner and Lawrence George Kruchten, petitioner in a companion case, Kruchten v. Eyman, 276 F.Supp. 858 (1967) were each 22 years old, and residents of Illinois on December 21, 1962. For some months prior to that date they had been working sporadically at a variety of jobs in Southern California. While in California they met Sally Ann Pierce, aged 20. Miss Pierce had a 1959 Chevrolet automobile and One Hundred Forty Dollars cash; the three decided to take her car and drive to Florida. Sometime after the original formation of the plan, the three decided to stop in Chicago for the Christmas holidays. On December 21, 1962, they left California, taking with them some brandy and beer which they consumed, along with other intoxicants, during the day.

About ten miles outside Salome, Arizona, in Yuma County, the three stopped near a roadside rest area, and walked about two miles into the desert. At that point Janovic picked up a rock and hit Miss Pierce on the head two or three times; Kruchten then took the rock and hit the deceased twice more. Janovic and Kruchten returned to the automobile and drove away, taking the deceased's money, clothing, portable television, and phonograph. The clothes were discarded later that day, along with Kruchten's blood-stained shirt. The television was sold in Kansas City, the phonograph in suburban Chicago. Miss Pierce apparently died where she fell; the rock was found near the body, covered with hair and blood stains.

In the Superior Court, Janovic and Kruchten were charged on a single information with the crime of first degree murder. They were represented by Ralph Brandt, Esquire, an experienced Yuma attorney. He had been hired by Janovic's parents, and agreed to represent Kruchten after discussing the case with petitioner. Pleas of guilty were received on July 16, 1963. A mitigation hearing was held on July 26, 1963, and the death sentence was imposed by Judge William W. Nabours.

█ Petitioner's first allegation to support his claim that he is in custody unlawfully is that the failure of the trial court to have him given a psychiatric examination prior to entry of a plea and imposition of sentence constituted a violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution. There is no question that conviction of an accused person, while he is legally incompetent, violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

Janovic served in the United States Marine Corps for a period of twenty months, spending the last five months in psychiatric wards at military hospitals in Honolulu and Philadelphia. His enlistment was terminated on February 25, 1959, "by reason of honorable discharge (COG) as unsuitable for military service," because of "emotional instability" described at length in the Board of Medical Survey report of February 11, 1959. That report became part of his permanent military medical record.

Shortly after petitioner's arrival in Yuma for arraignment, Brandt was informed of Janovic's prior psychiatric history. On May 29, 1963, Brandt wrote to the Marine Corps to obtain a copy of petitioner's medical record. A photostatic copy of that report was dispatched on June 17, 1963; it was subsequently introduced as an exhibit at the mitigation hearing on July 26, 1963.

On July 5, 1963, Brandt requested and obtained from the Superior Court an order directing that Janovic be given a psychiatric examination by a state psychiatrist before any plea was to be entered. That examination was never given.[1]

The reason the examination was not administered does not appear in the record of the trial Court, but was explained at the coram nobis by Brandt. He stated that following his contact with and observation of Janovic, while preparing the defense, it was his opinion that an examination would have been more harmful than helpful:[2]

"* * * it was my judgment that a psychiatric exam would not have been beneficial, that a psychiatric exam most likely would have erased the problem and the question that we had invoked in the Court's mind by the stipulation, the order, the initiation and the record of the Marine Corps. * * * This is a matter of judgment on my part. Part of what I thought would be the best strategy * * * of defense."

█ At the time of the coram nobis hearing, petitioner was examined, at the request of his appellate counsel, by T. Richard Gregory, M.D., a practicing psychiatrist in Phoenix. His report to the Superior Court supports Brandt's fears

---

1. See findings of fact and conclusions of law adopted by the Arizona Supreme Court, State v. Kruchten, 101 Ariz. 186, 190, 417 P.2d 510, 514 (1966):
Findings of Fact:
"5. Appellant Janovic did not have the benefit of the psychiatric examination as ordered by the Superior Court for the reason that the examination was waived by Counsel for the Defendant Janovic and the Yuma County Attorney before the Honorable William W. Nabours, Judge of

the Superior Court, prior to the entry of the pleas of guilty for each of the Defendants."
Conclusions of Law:
"3. From all the facts and circumstances as found the Appellant Janovic should not have had the benefit of a psychiatric examination before entering a plea of guilty."

2. Coram Nobis transcript, November 16, 1965, p. 307.

that an examination might erase all doubts of Janovic's insanity. Dr. Gregory stated that it was his opinion that Janovic was able to know right from wrong, the nature and consequences of his acts, the nature of the proceedings lodged against him, and was able to assist counsel in his defense. These are the elements of the M'Naughten Rule, which is the Arizona test for criminal responsibility. State of Arizona v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965), cert. den. 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966); or the Federal and State rules for ability to stand trial, Smith v. United States, 267 F.2d 210 (9th Cir. 1959); Arizona v. Alford, 98 Ariz. 124, 402 P.2d 551 (1965), cert. den. 382 U.S. 1020, 86 S.Ct. 625, 15 L.Ed.2d 535 (1966).

Petitioner urges upon this Court the argument concerning the difficulty that arises when attempting to retroactively determine mental condition. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). However, the testimony of Dr. Gregory establishes with reasonable certainty that Janovic's mental condition in late 1965 was essentially the same as it. had been in December, 1962, or July, 1963.

> "My examination was in December 1965 as I recall and I believe that with reasonable certainty his mental status was not at that time different from what it would have been in the preceding two or three years. * * * I found no disease or mental disorder [which would have existed in 1962–3]." [3]

Brandt's decision to rely at the mitigation hearing on petitioner's Marine Corps medical report rather than run the risk of a clean bill of health, which would have entirely removed the insanity defense, appears to be a reasonable decision in light of the facts then available. Brandt made that determination after examining the medical records, and after talking with and observing petitioner at various times during a period of a month and a half. The validity of that decision is supported by later expert medical testimony.

■ The Superior Court did not have the inherent power to compel petitioner to submit to a mental examination after competent counsel had determined that such examination would not be beneficial, but, indeed, might be detrimental, in defending against a first degree murder case. Steward v. Superior Court of Maricopa County, 94 Ariz. 279, 383 P.2d 191 (1963). Meador v. United States, 332 F.2d 935 (9th Cir. 1964), cited by petitioner is not applicable here, because in that case a mental examination requested by counsel was refused by the Court. In this case, counsel knowingly waived examination on behalf of petitioner, because he felt that was the best way to preserve the strongest defense.

■ The basic definition of waiver is found in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938):

> "* * * an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver * * * must depend, in each case, upon the particular facts and circumstances surrounding that case * * *."

Here petitioner, through his competent counsel deliberately determined, for strategic reasons, not to risk a contemporary psychiatric examination which might have completely negated his insanity defense. This constitutes a valid waiver of a constitutionally guaranteed right; it means that petitioner cannot now raise this matter because events in the trial Court did not proceed as counsel or petitioner had hoped. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner alleges that the representation provided by Brandt constituted a denial of effective assistance of counsel

---

**3.** Testimony at the habeas corpus hearing, September 28, 1967.

in violation of the Sixth Amendment. Two months before Brandt was hired the United States Supreme Court held that the Sixth Amendment right to counsel is a fundamental right essential to a fair trial, and thus, obligatory on state Court prosecutions. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ That Janovic was entitled to be defended in this case by competent counsel is beyond question. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951); McGuire v. United States, 289 F.2d 405 (9th Cir., 1961). However, assistance of counsel does not necessarily mean successful assistance. Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962) states:

"* * * [The accused is entitled to] 'effective aid in the preparation and trial of the case.'

This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive an accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' Determining whether the demands of due process were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; * * *."

■ In this Circuit denial of effective assistance of counsel means that the attorney's conduct must be "so incompetent as to make the trial 'a farce or a mockery of justice,' " Rivera v. United States, 9 Cir., 318 F.2d 606, 608 (1963), "shocking to the conscience of the court." Dodd v. United States, 9 Cir., 321 F.2d 240, 243 (1963). See, Stanley v. United States, 9 Cir., 239 F.2d 765 (1956); Latimer v. Cranor, 9 Cir., 214 F.2d 926 (1954) [habeas corpus].

■ In 1963 Ralph Brandt had been a member of the Arizona Bar for 22 years, had held executive positions with the state and local bar associations, and had handled over 100 criminal causes, including at least four murder cases. He was an experienced attorney, well thought of for his professional capabilities. Notwithstanding these qualifications, it is possible that Brandt could have conducted this case so as to fail to meet the requirements for effective assistance of counsel. A careful look at the record indicates that this is not such a case. The Supreme Court of Arizona found that there had been adequate representation by counsel;[4] this Court sees no reason to disagree.

Petitioner asserts that Brandt failed to fully investigate the facts surrounding the crime and the circumstances of the giving of the confession. This is not borne out by the record at the coram nobis. Before Janovic and Kruchten arrived in Yuma, Brandt had made efforts to educate himself as to the facts of the crime; most important, he had read the statements of the defendants, which they had given to the Federal Bureau of Investigation. When Janovic and Kruchten were brought to Yuma he met with them the morning after their arrival and asked if their statements to the Federal Bureau of Investigation accurately reflected the details of the crime, and if the confession had been given voluntarily. At that time both defendants answered affirmatively. Throughout the lengthy history of this case, petitioner has contended that Brandt committed error by not making

---

4. State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, at page 514.
Findings of Fact:
"1. Appellants' attorney fully counseled with each of the Appellants in regard to the facts and possible defenses arising therefrom before advising them to enter pleas of guilty."

Conclusions of Law:
"1. All the facts and circumstances as found did not deprive the Appellants or either of them of effective assistance of Counsel under the Sixth Amendment to the Constitution of the United States."

a detailed examination of the truth of those statements. It is interesting to note that at no time, not at the mitigation hearing, not at the coram nobis, not in the Arizona Supreme Court, not in this Court, has petitioner ever shown that the Federal Bureau of Investigation statements diverge from the truth on a single point.

Petitioner attempts to make much of the fact that Brandt usually counseled with his clients only before or after each court appearance, and then only for relatively short periods of time. What is not taken into consideration is the considerable amount of time Brandt spent outside the presence of his clients on activities in their behalf.

Janovic also questions the soundness of counsel's advice, stating that Brandt, from the inception, chartered an undeviating course predicated upon a plea of guilty. In his initial conversation with Janovic's parents, Brandt advised them that if the facts as he understood them proved correct, he saw no possibility of obtaining a verdict of acquittal. This seems to be a reasonable attitude of a realistic and knowledgable attorney, not set on raising false hopes. The record shows that, from his first contact with the case, Brandt felt that a guilty plea would be the most beneficial course in light of the overwhelming evidence indicating guilt, but as late as July 16th, he had not finally determined what plea to enter or how to conduct a leniency hearing if one were held.

Conduct of counsel in this case comes nowhere near the standard for reversal required by the Ninth Circuit. This was a shocking case which presented counsel with few opportunities to present a meritorious defense. He felt that the best way to serve his clients was to plead for mercy from the Court; there had never before been a death sentence on a plea of guilty in Yuma County. Had the Court acted as expected, his clients indicated they would have been well satisfied with the services rendered by counsel. The Court did not so act. This does not alter the fact that counsel gave effective assistance to the best of his ability. There is no merit to petitioner's contention that his Sixth Amendment rights were violated.

■ Petitioner additionally contends that the consideration at sentencing and at the coram nobis of the confession constituted a violation of the due process clauses of the Fifth and Fourteenth Amendments. It is not necessary to discuss whether the confession would have been admissible at a trial on a plea of not guilty because the Supreme Court of the United States has long held that a sentencing judge can exercise wide discretion "in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." Williams v. People of State of New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337 (1949):

> " * * * The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.
>
> *　*　*　*　*　*
>
> We cannot say that the due-process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence." (Mr. Justice Black, 337 U.S. at 251–252, 69 S. Ct. at 1085.)

There was no abuse of discretion nor violation of the due process guarantees in the consideration of the confession following the entry of a plea of guilty. Application of Hodge, 262 F.2d 778 (9th Cir., 1958), cert. den. 356 U.S. 942, 78 S.Ct. 789, 2 L.Ed.2d 818 (1958).

Sentence in this case was imposed under A.R.S. § 13–453, which prescribes for first degree murder either death or life imprisonment. Upon a plea of guilty,

the Court is charged with the determination of the sentence.

Petitioner contends that under the circumstances of this case the imposition of the death penalty constituted cruel and unusual punishment which is prohibited by the Eighth Amendment.

 It is well settled that a sentence within a valid statute cannot amount to cruel and unusual punishment; when a statute provides for such punishment, the statute only can be attacked. Pependrea v. United States, 275 F.2d 325 (9th Cir., 1960). There is also a long line of Supreme Court cases holding that the death penalty is neither cruel nor unusual. Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Wilkerson v. Utah, 99 U.S. 130, 25 L.Ed. 345 (1878). See, Jackson v. Dickson, 325 F.2d 573 (9th Cir., 1963), cert. den. 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 501 (1964).

Petitioner asks the Court to believe that counsel guaranteed that, because of his age and previous psychiatric history he would be given life imprisonment, with the possibility of parole in eight years. Petitioner does not contend that he did not know that the death sentence was a possible penalty, only that he was assured that it would not be given in his case. It is understandable how someone in his position, with a death penalty prosecution pending, could convince himself that the ultimate sentence will not be given. This is rationalization of the most common sort. However, one wonders what petitioner, an intelligent young man, thought was the aim of the mitigation hearing, the production of the medical report, the presence of his family at the hearing, his own testimony, and the efforts of counsel, if life imprisonment had already been guaranteed.

 This Court must conclude, as did the Arizona Supreme Court,[5] that petitioner knew the death penalty was a possible consequence of his plea, although he and his counsel hoped and expected that it would not be given. All of the relevant facts about petitioner, especially his medical record and the nature of the crime, were before the judge for his consideration at the time of sentencing. Under these circumstances the imposition of the death penalty does not constitute cruel and unusual punishment and does not violate the Eighth Amendment.

Finally, petitioner alleges that the failure of the Superior Court of Yuma County to have a court reporter stenographically report all oral proceedings, in violation of Rule 252, Arizona Rules of Criminal Procedure, 17 A.R.S., constituted a denial of due process of law. Rule 252 reads:

> "An official court reporter shall attend the court in all actions prosecuted by indictment or information. The reporter shall stenographically report all oral proceedings before the court, * * *"

The mandate of this rule was not complied with in this case. Apparently at the sessions of the Yuma Court held on June 26, July 5, and July 16, 1963, no verbatim stenographic record was made.[6] The only records existent of those proceedings are minute entries made by the clerk of the court.

 Were it not for several additional factors, this lack of compliance with Rule 252, supra, together with such cases as Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); Heiden v. United States, 353 F.2d 53 (9th Cir., 1965); Munich v. United States, 337 F.2d 356 (9th Cir., 1964); Kadwell v. United States, 315 F.2d 667 (9th Cir., 1963); and Brown v. Heinze, 248 F.Supp. 293 (N.D.Cal., 1965) recognizing how important it is that a plea

**5.** 417 P.2d at 514.
Conclusions of Law:
"2 The Appellants and each of them understood the effect and consequences of their pleas of guilty."

**6.** Although the transcript of the coram nobis and the minute entries by the clerk indicate a reporter may have been present.

of guilty be accepted only when made voluntarily with understanding of the nature of the charge, might convince this Court that the lack of a transcript raised substantial questions of compliance with due process requirements sufficient to require a new trial.

Of the additional factors, the first and most important is the transcript of the mitigation hearing where Judge Nabours's interrogation of the petitioner and Kruchten amounted to a re-arraignment. This proceeding, standing alone, might be sufficient to meet due process requirements; taken in conjunction with the evidence available as to what transpired at the original arraignment on July 16, 1963, there is no doubt that the Court adequately determined that Janovic and Kruchten comprehended the nature and consequences of their plea and made that plea voluntarily. In relevant part the hearing transcript shows these proceedings:[7]

"THE COURT: * * *

Joseph William Janovic, Jr., and Lawrence George Kruchten, I must inform you and each of you individually that the County Attorney of this County on the 14th day of June, 1963, filed an Information in this Court against you and each of you jointly and individually wherein you were accused of the commission of the crime of first degree murder, a felony. You appeared before this Court on the 26th day of June, 1963, accompanied by your Counsel, and were duly arraigned on the charge filed against you therefor and, at your request, the matter was continued until the 16th day of July, 1963, when you both again appeared before the Court accompanied by your Counsel, for the purpose of entering a plea to the charge made against you by the State.

Upon being asked what your plea was, you, and each of you, wished to enter a plea of guilty to the offense charged, to-wit, murder of the first degree. The Court first satisfying itself by interrogating each of you individually that you fully understood the nature and meaning of the charge made against you, together with the meaning of the plea of guilty, and you were fully aware of the penalties provided by law as the punishment of said crime, and that said plea was entered freely and voluntarily by each of you without any promises or threats being given or made by any person whatsoever, the Court caused a plea of guilty to murder of the first degree to be entered of record as the plea of each of you to the offense charged by the Information.

It is now the judgment of this Court that you, Joseph William Janovic, Jr., and Lawrence George Kruchten that you are guilty of the crime of murder of the first degree, a felony."

Second, the minute entries for July 16, 1963, stand as a good indication of the nature of the interrogation at the arraignment:[8]

"This being the time set for the defendants to enter their plea, the County Attorney, Jeff Richards, being present on behalf of the State and the defendants in person and represented by their attorney of record, Ralph Brandt.

The defendants now regularly enter a plea of 'guilty' to the charge of first degree murder and upon each defendant being interrogated IT IS ORDERED that the plea may be entered of record. Counsel for the defendants now requests the Court to consider the sentence of life imprisonment and IT IS ORDERED the case be continued to July 26, 1963 at 9:00 for the imposition of sentence."

Third, the testimony of Judge Nabours at the coram nobis hearing with regard to

7. Transcript of Yuma County Superior Court, July 26, 1963, pp. 2–4.

8. Certified copy of the Yuma County Superior Court Clerk's records for July 16, 1963.

the questions directed to petitioner and Kruchten before accepting the guilty plea on July 16, 1963, indicates compliance with due process requirements:[9]

"Q * * * Would you, to the best of your recollection, relate to us what you said to the defendants and what they said to you on that occasion?

A Upon being asked if the defendants were ready to enter a plea of guilty the counsel for the defendants stated that they were. He was asked what the plea was, and he stated that both defendants wished to enter a plea of guilty to the charge made against them in the information, which was murder in the first degree.

I then stated to the defendants individually 'You have heard the statement of your Counsel that you wish to enter a plea of guilty to the charge made against you in the information which is murder in the first decree.'

Speaking to the defendants individually, and whether it was to Mr. Janovic or Mr. Kruchten first I can't say at this time, but to one of them, for example Mr. Janovic, 'You have heard the statement of your Counsel that you wish to enter a plea of guilty to the charge made against you, murder in the first-degree. Is that your plea?'

He stated that it was.

I asked him if he fully understood the nature and the meaning of the charge placed against him, and the meaning of the plea of guilty. He stated that he did.

I asked him if any threats or promises of immunity of any kind had been made to him, and he stated they had not.

I asked him if he understood that the punishment provided by the statutes of the State of Arizona for the charge of murder in the first-degree was death or life imprisonment. And he stated that he did.

Those are the identical questions that were then asked of the other defendant, and the same answers were given.

Whereupon the Court accepted the plea of guilty by both men from themselves individually."

Fourth, Judge Nabours's testimony is corroborated by Donald O'Neill, reporter for the Yuma Daily Sun, who was present at the original arraignment:[10]

"Q Did Judge Nabours question the defendants individually?

A Yes.

Q Did he question them further than the question and answer that you have previously given?

A Yes.

Q What was his further inquiry of the defendants?

A He inquired whether or not they understood that the death penalty could be imposed.

Q Did he ask this question of both defendants jointly, or did he ask it separately of them?

A I can't say for certain that he asked them separately.

Q Did the defendants reply to this inquiry?

A Yes.

Q Did they reply through Counsel or individually?

A They replied individually because he was questioning them individually.

9. Coram nobis transcript, November 18, 1965, pp. 646–48.

10. Coram nobis transcript, November 18, 1965, pp. 471–72. See also, "Two Plead Guilty to First Degree" Yuma Daily Sun, coram nobis Exhibit #16.

Q Do you recall what their reply was?

A They replied, 'Yes.' "

Heiden v. United States, supra, finds that for Federal Courts, Rule 11 of Federal Rules of Criminal Procedure is mandatory in its terms, even without a showing of prejudice. Other circuits have declined to follow this decision. See, Brokaw v. United States, 368 F.2d 508 (4th Cir., 1966); Townes v. United States, 371 F.2d 930 (4th Cir., 1966); Domenica v. United States, 292 F.2d 483 (1st Cir., 1961); and Hobbs v. United States, 340 F.2d 848 (7th Cir., 1965). *Heiden* has so far not been extended by the Ninth Circuit to require Rule 11 interrogation of defendants at arraignment in state proceedings. The Sixth Circuit in a recent opinion, Waddy v. Heer, 383 F.2d 789 (6th Cir., 1967) [October 10, 1967] held that due process does not require compliance with a particular procedure when a plea is accepted from a defendant represented by counsel.

■ On the basis of all of these considerations, this Court concludes that petitioner was not prejudiced by a lack of a court reporter at the arraignment. There is ample evidence in the record before this Court to show that the due process requirements of voluntariness and comprehension were met when the guilty pleas were received.

The discussion of whether there was a conflict of interest between Janovic and Kruchten requiring separate counsel, United States v. Glasser, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), in the companion case of Kruchten v. Eyman, 276 F.Supp. 858 (1967) [decided this date] is relevant to this case and is adopted herein.

For the foregoing reasons it is the determination of this Court that petitioner is not restrained of his liberty in violation of the Constitution or laws of the United States.

Petition is denied.