**Joseph William JANOVIC, Jr., Appellant,**

**v.**

**Frank A. EYMAN, Superintendent, Arizona State Prison, Appellee.**

**No. 22707.**

United States Court of Appeals
Ninth Circuit.

Jan. 16, 1969.

Joe W. Contreras (argued), Phoenix, Ariz., Leonard H. Lawrence, Chicago, Ill., for appellant.

James S. Tegart (argued), Deputy Atty. Gen., Darrell F. Smith, Atty. Gen., Norval C. Jesperson, Asst. Atty. Gen., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CRARY, District Judge.*

CRARY, District Judge:

The instant appeal is from the order of the United States District Court for the District of Arizona made on December 1, 1967, denying, after hearing, appellant's petition for Writ of Habeas Corpus, and is a companion appeal to that of appellant Kruchten, No. 22,706, which was perfected from a similar order of the said United States District Court. Janovic v. Eyman, D.C., 276 F.Supp. 862, and Kruchten v. Eyman, D.C., 276 F. Supp. 858.

The opinion of this Court, affirming the order of the United States District Court denying the petition for Writ of Habeas Corpus in Kruchten v. Eyman, 406 F.2d 304, decided contemporaneously with the within case, is here referred to and the pertinent portions thereof incorporated herein. The issues in the two cases are closely related and the opinions should be read together.

Both appellant Janovic and his co-defendant Kruchten pleaded guilty to first degree murder in the Superior Court of Arizona, in and for the County of Yuma, and each was sentenced to death. The convictions on their pleas of guilty were appealed to the Supreme Court of Arizona by each appellant separately. That Court affirmed the judgments of the trial Court in both cases. State v. Janovic, 101 Ariz. 203, 417 P.2d 527; and State v. Kruchten, 101 Ariz. 186, 417 P.2d 510.

The Supreme Court of Arizona, before deciding the appeals, ordered a Coram Nobis hearing and requested Findings of Fact and Conclusions of Law as to specified matters. State v. Kruchten, supra, page 514, Footnotes 1 and 2.

Arizona Superior Court Judge Ross Jones was appointed by the Supreme Court of Arizona to conduct the proceedings and he held a full, fair and exhaus-tive hearing on November 15–19, 1965, inclusive. Transcript of the testimony taken at the Coram Nobis hearing, together with all exhibits admitted in evidence and the record in the Arizona trial Court, were considered by the Supreme Court of Arizona before deciding the appeals.

The specifications of error urged in this appeal are as follows:

"1. The acceptance of a plea of guilty to murder from Appellant was invalid and a nullity since:

a. The trial court, after ordering that Appellant receive a psychiatric examination, failed to have Appellant's competency to enter a plea determined.

b. The trial court failed to have the acceptance of the plea stenographically reported thereby depriving Appellant of the opportunity to determine whether the plea of guilty was voluntarily and intelligently made with a full understanding of the true nature of the charge.

2. Appellant failed to receive the effective assistance of counsel to which he was entitled since his privately retained counsel:

a. Represented a co-defendant charged with murder without taking adequate steps to determine whether there was a conflict of interest precluding such representation.

b. Did not ask or discuss with Appellant the facts and circumstances surrounding the alleged crime or the manner and circumstances under which the F.B.I. obtained a confession.

3. The trial court's imposition of the death sentence upon Appellant's plea of guilty constitutes

---

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

cruel and unusual punishment since the trial court failed to follow the prescribed guide lines in order to comprehensively evaluate the Appellant as an individual before imposing sentence."

■ The first specification is not one urged by Kruchten in his appeal. Finding of Fact No. 5 made by Judge Jones after the Coram Nobis hearing, and his Conclusion of Law No. 3 concerns the psychiatric examination of Janovic and are here quoted:

"'5. Appellant Janovic did not have the benefit of the psychiatric examination as ordered by the Superior Court for the reason that the examination was waived by Counsel for the Defendant Janovic and the Yuma County Attorney before the Honorable William W. Nabours, Judge of the Superior Court, prior to the entry of the pleas of guilty for each of the Defendants.'"

\* \* \* \* \* \*

"'3. From all the facts and circumstances as found the Appellant Janovic should not have had the benefit of a psychiatric examination before entering a plea of guilty.'"

State v. Kruchten, supra.

It is true that the Arizona trial court, prior to sentence and on July 5, 1963, ordered a psychiatric examination for appellant Janovic which was not accomplished because of the decision of his counsel, Ralph Brandt, Esq., to forego the examination by reason of the attendant possibility of appellant Janovic being found to be competent and not suffering from any mental illness at the time of the commission of the offense charged or at the time of his plea.

Appellant Janovic had been under psychiatric study for several months while in the Marine Corps during the latter part of 1958 and the forepart of 1959 and was diagnosed at that time to be suffering from emotional instability. For that reason he was discharged from the Marines in February, 1959. Attorney Brandt finally concluded, after the offer of Janovic and Kruchten to plead guilty to second degree murder was refused, that the interests of Janovic would best be served by his pleading guilty to the charge of first degree murder and using the Marine Corps medical record in seeking a sentence of life imprisonment. His strategy, insofar as the possibility of a psychiatric examination disclosing competency on the part of Janovic, was not in error.

Judge Jones, at the request of Janovic's appellate counsel, ordered Janovic examined by a psychiatrist, Dr. T. Richard Gregory, and his report was considered by the Court in the Coram Nobis hearing. Dr. Gregory testified at length before United States District Judge Walter Craig at the hearing on the petition for Writ of Habeas Corpus. It was his conclusion that Janovic was not incompetent at the time of the homicide or at the time of his plea. On the issue of the ability of Janovic to understand the nature of the proceedings against him and to assist in his defense, counsel asked Dr. Gregory:

"Dr., let me ask you this:

This personality disorder which Mr. Janovic had, according to your diagnosis, if during the period of time when in July of 1963 he had been consuming alcoholic beverages to a great extent, would this, coupled with the personality disorder, be of such consequence that he would be unable to understand the nature of the proceedings against him and to assist in his defense."

to which the Doctor replied:

"In my opinion, the combination of these two, the personality disorder plus in combination with acute alcoholism, could certainly impair his sensual modalities sufficiently that he might have periods where he would not understand or comprehend, not only what was going on about him, but really what he was doing, himself."

There was testimony by Janovic that he drank beer on occasions while in jail in Yuma but there is no evidence of

acute alcoholism on the part of Janovic during June or July, 1963.

Viewing the case prior to the plea, we conclude the strategy of Attorney Brandt was reasonable and appropriate in the circumstances. The facts and circumstances as of the time of entering the plea of guilty and the effective assistance of counsel are discussed in more detail in our opinion in the Kruchten appeal.

■ Appellant's contention that the failure to have the proceedings, at the time of the plea, stenographically reported, resulted in nullification and invalidity of his plea of guilty, we have decided is without merit. Both Judge Nabours, who sentenced the appellants, and newspaper reporter Donald O'Neill, of the Yuma Daily Sun, who was present, testified as to what occurred at the sentencing proceedings on July 16, 1963.

■ Both appellants Janovic and Kruchten argued that there was a conflict of interest between them which precluded their joint representation by Attorney Brandt. The issue of conflict of interest is considered at length in our opinion in the Kruchten appeal and we will not repeat the discussion of that point.

■ Brandt testified he discussed the case in all its various aspects with Janovic and Kruchten at court appearances and during a meeting in the sheriff's office following the filing of the Information on June 14, 1963. He also spent a substantial amount of time investigating the case before Janovic and Kruchten were returned to Yuma on May 24, 1963.

The Court appearances were on May 25, 1963, before Justice of the Peace Byrd, when reading of the complaint and preliminary hearing were waived; June 26, 1963, arraignment in Superior Court and case continued to July 5th for sentence; July 5, 1963, psychiatric examination of Janovic ordered and further continuance for plea; July 16, 1963, pleas of guilty to first degree murder entered; and July 26, 1963, mit-

igation hearing and appellants sentenced to death.

Janovic testified: "I believe Mr. Brandt told us, Lawrence and myself, every time we came to court, what he was going to do in the courtroom that day, what he was going to ask for."

A fourteen page statement of Janovic was taken by F.B.I. agents in Chicago following his arrest on March 19, 1963, on a warrant issued for violation of the Dyer Act. This statement included a confession of the homicide and related in detail the facts and circumstances both before and after the crime.

Brandt testified to facts and circumstances on which he based his conclusion that the confession was true and voluntary. He testified he discussed with both Janovic and Kruchten their respective confessions to the F.B.I., and the truthfulness and voluntariness thereof, and that with respect to Janovic's statement, he said: "At the time I appeared in the Justice Court I was satisfied the F.B.I. statement was voluntarily given, and that it was—represented then the truth of the facts therein stated." At one point in the Coram Nobis hearing, Brandt said that by Janovic's "words and attitude" in regard to his statement to the F.B.I. he concluded it was voluntarily given. He went on to say, referring to Janovic: "His attitude then and throughout the entire matter was that he had made this error, he was very remorseful * * * he couldn't live with himself with this upon his conscience. And he wanted to more or less cleanse himself of this mistake he had made."

Janovic testified that he had consumed eight to ten beers during the hour before he was arrested, which was approximately 11:00 P.M., March 19th, and that he was drunk at the time. F.B.I. Agent Downey, who testified at the Coram Nobis hearing and who interrogated Janovic, stated that he did not detect the odor of alcohol about Janovic's person, that his speech was not slurred in any manner, and in answer to the question, "Mr. Downey, could you detect anything

about the person of the defendant Janovic which would suggest to you that he had been drinking or was then intoxicated?", he answered, "No, Sir."

After being advised of his constitutional rights Janovic asked to call an attorney and did so. That attorney, however, decided not to take his case. The interrogation of Janovic started about 12:00 P.M. At about 12:35 A.M., after a conference with Kruchten, he commenced to relate the facts contained in his statement which, after being reduced to writing, were checked and signed by Janovic at about 4:30 A.M.

The comprehensive statement given to the F.B.I. by Janovic lends no credence to any suggestion he was then suffering from acute alcoholism so that he did not understand or comprehend what he was doing or what was going on about him either at the time of the interrogation or the time of the homicide. In his statement to the F.B.I., Janovic related the plan formulated by Kruchten and himself at a bar in Wickenburg, to hit Sally over the head " * * * knocking her out and then leave her, taking her car and money." He stated in great detail all the facts involved in the execution of this plan up to and including the walk on the desert, hitting Sally with the rock, and what they did thereafter until their arrival in Phoenix that night.

It is claimed that Janovic's confession was not voluntary, but the record simply does not support the claim.

Mrs. Janovic, appellant's mother, and appellant Janovic testified that Brandt took the case on the condition Janovic plead guilty. Brandt positively denies any such condition of his employment. The facts and circumstances surrounding this issue and evidence throwing light thereon are discussed in our opinion in the companion appeal of Kruchten.

The appellant asserts that imposition of the death sentence was cruel and unusual punishment and that the sentence " * * * is excessive and cruel because the trial court, prior to sentencing, did not fully evaluate and consider the appellant as an individual." Under Arizona law the Court, on a plea of guilty to first degree murder, is charged with the determination of whether the sentence will be to death or life imprisonment. If the sentence is cruel and unusual it is because the death penalty was imposed and not by reason of the failure of the trial Court to comprehensively evaluate appellant as an individual.

That this Court might have considered the death penalty excessive in the circumstances is not the issue. The death penalty has been held to be constitutional in several decisions. Trop v. Dulles, 356 U.S. 86, 99, 78 S.Ct. 590, 2 L.Ed.2d 603 (1958); and Jackson v. Dickson, 325 F.2d 573, 575 (9 C.A.1963).

Appellant contends that he believed Attorney Brandt had "guaranteed" he would be given a life sentence. Such a conclusion is so inconsistent with the obvious objectives of the mitigation hearing, the production of medical records, Janovic's own testimony, and the expressed efforts of counsel, as to make it unconvincing.

After full consideration of the evidence, the Court concludes that the Findings of Fact of the District Court, as they appear in its opinion, Janovic v. Eyman, 276 F.Supp. 862, supra, are not erroneous and that its conclusion that Mr. Janovic is not restrained of his liberty in violation of his constitutional rights is supported by the law and substantial evidence. The order denying the petition for Writ of Habeas Corpus is affirmed.