Lawrence George **KRUCHTEN**, Appellant,

v.

Frank A. **EYMAN**, Superintendent, Arizona State Prison, Appellee.

No. 22706.

United States Court of Appeals Ninth Circuit.

Jan. 17, 1969.

Arthur E. Ross (argued), Phoenix, Ariz., Laurence Davis, Washington, D. C., for appellant.

James S. Tegart (argued), Deputy Atty. Gen., Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, Ariz., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CRARY, District Judge.*

CRARY, District Judge.

Appellant, Lawrence George Kruchten, appeals from the order of the United States District Court for the District of Arizona dated December 1, 1967, denying appellant's petition for Writ of Habeas Corpus filed with the United States District Court, under Title 28, United States Code, Section 2254, Kruchten v. Eyman, 276 F.Supp. 858.

The appellant and his co-defendant, Joseph William Janovic, Jr., pleaded guilty in the Superior Court of the State of Arizona, in and for the County of Yuma, to the crime of first degree murder, and sentence to death was imposed on both defendants July 26, 1963. Appeal of appellant Janovic has been considered separately and decided contemporaneously with the instant appeal.

Post sentence proceedings, and appeals to this Court, of Kruchten and Janovic, have been the same except for some variance in the grounds urged on appeal to the Supreme Court of Arizona, for Habeas Corpus relief, and in their respective specifications of error on appeal to this Court.

During August, 1963, different and separate counsel were substituted for Kruchten and Janovic, and notice of appeal to the Supreme Court of Arizona was filed by each of the appellants from the conviction and sentence and separate appeals were perfected.

The Supreme Court of Arizona ordered a hearing in the nature of a Coram Nobis proceeding which was held on November 15 to 19, 1965, inclusive, in Yuma, Arizona, before the Honorable Ross Jones, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa. Judge Jones made detailed Findings of Fact and Conclusions of Law on subjects specified by the Supreme Court of Arizona. State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, footnote 1, page 514. That Court affirmed the conviction after reviewing the transcript of the Coram Nobis proceedings and all exhibits and Reporter's Transcript of proceedings in the trial court. 101 Ariz. 186, 417 P.2d 510 (Aug. 2, 1966), supra; cert. denied, Kruchten v. Arizona, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967).

Following the filing of Kruchten's petition for Writ of Habeas Corpus in the United States District Court for the District of Arizona on March 31, 1967, that Court, on the same date, issued an Order to Show Cause why said petitioner should not be released from custody. Hearing pursuant to that Order was held

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

on September 27 and 28, 1967. That hearing included a petition for Writ of Habeas Corpus, also filed on March 31, 1967, by Janovic. The District Court denied both petitions by its opinions and orders filed December 1, 1967, Kruchten v. Eyman, 276 F.Supp. 858, and Janovic v. Eyman, 276 F.Supp. 862, and both Kruchten and Janovic perfected appeals to this Court.

The appellant, Kruchten, asserts he did not receive due process of law from the State of Arizona, as required by the 14th Amendment of the United States Constitution and " * * * to the extent that their provisions inhere in the concept of due process, under the 5th, 6th, and 8th Amendments."

The specifications of error urged by Kruchten in this appeal are:

(1) He pleaded guilty in ignorance of the nature and cause of the accusations against him.

(2) He did not receive a fair trial because of ineffective assistance of counsel.

(3) Lack of due process in the totality of circumstances.

Under point (2) above, appellant urges (a) "Failure of communication" between Kruchten and his attorney, Mr. Brandt, (b) "Conflict of interest" between Kruchten and Janovic, and (c) "Lack of performance" by counsel.

## STATEMENT OF FACTS

The appellant and Janovic, both age 22, and both residents of Chicago, Illinois, were jointly charged with the crime of first degree murder of one Sally Ann Pierce, age 20, on December 21, 1962, while traveling in Miss Pierce's 1959 automobile from Los Angeles to Florida. It appears from the evidence that Miss Pierce had been an acquaintance of appellants since early December, 1962. They had been in California some months prior thereto.

Before leaving Los Angeles on the morning of December 21, 1962, they purchased some beer and brandy, which, with other intoxicating liquors, were consumed during that day. At dusk, when they were about ten miles out of Salome, Arizona, in Yuma County, they stopped near a roadside rest area and the three walked about two miles into the desert toward the nearest hill. Kruchten preceded Miss Pierce and she was followed by Janovic. Janovic picked up a rock and hit Miss Pierce on the head with it two or three times and Kruchten then took the rock and hit her twice on the head. Kruchten and Janovic then returned to Miss Pierce's car, leaving her lying on the desert, and drove the car to Chicago, taking her money (approximately $140), portable television, record player and personal effects. The television was sold in Kansas City and the record player disposed of at a gas station in the suburbs of Chicago on their arrival in that city on December 24, 1962. Miss Pierce died, apparently where she had fallen, and the rock which appellants had used to strike her was found nearby with hair and bloodstains on it.

On the evening of March 19, 1963, F.B.I. agents arrested Kruchten in his apartment in Chicago, under a warrant for the arrest of both Kruchten and Janovic, on the charge of interstate transportation of a stolen vehicle. A few hours later Janovic was arrested at the same address. They were interrogated separately commencing about 12:00 midnight. After a conversation between Janovic and Kruchten, held at the request of Janovic, about 12:35 A.M., Janovic said, "This has been bothering us a long time. Let's tell them and get it over with." Kruchten agreed and thereafter each, under interrogation in separate rooms, related the facts contained in their respective statements. The reduction of the statements to writing by the F.B.I. agents and their review, correction and signing, by Kruchten and Janovic, was completed between 4:00 and 4:30 A.M. the following morning. As set forth in their comprehensive statements, both admitted striking Sally Pierce on the head with the rock, leaving her on the desert, apparent-

ly unconscious and taking her car and other property.

Both appellants were returned to Yuma, Arizona, on May 24, 1963.

Following their arrests and prior to appellants' arrival in Yuma, Janovic's parents employed Mr. Ralph Brandt, a lawyer in Yuma, to represent their son and thereafter Mr. Brandt, on request of Janovic, Kruchten and Kruchten's wife agreed to and did represent Kruchten, as well as Janovic, in the proceedings in the trial court and to and including the filing of the notice of appeal to the Supreme Court of Arizona. Mr. Brandt had been a member of the Bar of Arizona since 1940. He was an able, general practitioner, having previously defended many persons charged with crime, including four charged with first degree murder.

Brandt told Janovic's mother in a telephone conversation about May 17, 1963, after he had reviewed the statements of Kruchten and Janovic and discussed the case with County Attorney Richards and the sheriff, that he had investigated the facts of the case and concluded he could not secure a verdict of not guilty and his principal effort should be directed toward obtaining a sentence to life imprisonment.

At the Coram Nobis hearing, Attorney Brandt testified that he did not make up his mind definitely that the plea should be guilty to first degree murder until the day that plea was made and, until then, he had not finally determined how to go about the plea for leniency. He said he had the alternative of pleading the boys not guilty and urging mitigation to the jury if they were convicted or enter pleas of guilty to the Court. He concluded it would be to the best interest of his clients for them to plead guilty and argue the issue of mitigation to the Court. One of the reasons for this conclusion was that there had never been a death sentence imposed, after a plea of guilty, by Judge Nabours, who was presiding in the case, nor by any other judge in Yuma County. Furthermore,

Judge Nabours had been a former law partner of his and he knew him well enough to believe he would impose a sentence to life imprisonment in the circumstances. It is true that Brandt, on September 5, 1963, wrote a letter to Kruchten's new counsel stating he was retained only for the purpose of entering the plea and presenting the leniency hearing.

The record is clear that Brandt did not inform Kruchten that he had accepted his case only on the condition that he enter a plea of guilty.

## FAILURE OF COUNSEL TO INFORM KRUCHTEN OF THE NATURE OF THE ACCUSATION

█ Kruchten testified at the Coram Nobis hearing that the first time he talked to Mr. Brandt was the morning of the first hearing in the justice court (May 25, 1963), when Brandt said he would represent him but nothing was said of a fee and he did not believe Brandt received any fee. He further testified that Brandt did not explain to him what second degree murder was, or the penalty therefor, and he did not remember any more conversation with Brandt or what the Judge said on that day.

He did not remember the next time he went to court (June 26) but he and Janovic had a conversation with Mr. Brandt on the way to court about pleading guilty and he understood that if he plead guilty he would "get off with life" and serve about eight years in prison.

On the day of plea (July 16), he did not recall what Brandt said to the Judge or if the Judge addressed him or whether he had said anything to the Judge, nor did he remember the conversation between Janovic, Brandt and himself in the sheriff's office relative to the mitigation hearing on July 26, 1963. He does recall that Mr. Brandt at one time said they did not have to go into the details of how Sally Pierce was killed because he had their statements to the F.B.I.

On cross examination, appellant Kruchten said he thought the maximum

penalty was life imprisonment until he was sentenced and that Brandt did not explain the charges to him. The Judge may have explained the possibility of the death penalty to him but he did not recall it. It was obvious from Kruchten's testimony that he had poor recollection of conversations and occurrences in and out of Court during the period from May 24 to and including the mitigation hearing on July 26, 1963.

Mr. Brandt testified at the Coram Nobis hearing relative to his experience as a lawyer, as referred to above, and his discussion of the case with Janovic and his family. He was first contacted by Mr. Janovic, Sr., on May 13, 1963, and by the time Kruchten and Janovic arrived in Yuma on May 24th he knew from his investigation "everything that was against the boys." He said he continued to get facts after May 13th, that he had access to the sheriff's files, talked to the County Attorney many times about the case, talked to Deputy Sheriff Hooker, who brought the boys back to Yuma from Chicago, and so forth.

He had talked to Kruchten, at Janovic's request, relative to his representation of Kruchten, the day after his arrival in Yuma. About June 5th he had received a letter from Kruchten's wife requesting that he represent Kruchten. On the day after their arrival in Yuma, the boys made an appearance in the justice court and on that day he went over with Kruchten the problems of the case and explained what he proposed to do, and on Kruchten's request he said he would represent him. He also, at that time, explained to Kruchten what a preliminary hearing was and that there was no need for one in this case. He went over with Kruchten the general field of questioning he had covered previously with Janovic and advised Kruchten he had a full background of the case by reason of the F.B.I. statements and asked Kruchten if his statement to the F.B.I. was true, to which he answered affirmatively.

After the Information was filed on June 14, 1963, he talked to the boys about the June 26th hearing and told them what would transpire and the nature of the plea. They talked in front of the sheriff's office and later went back into Sheriff Yancy's private office. During the conversation he went to the civil department and obtained a book from which he explained to Kruchten and Janovic the various degrees of homicide and what the consequences were and that the penalty for first degree murder was either life imprisonment or death. Second degree murder was also explained to them and he told them the penalty therefore was life imprisonment, which was the "ultimate goal of his representation." In his opinion, both defendants understood the nature and consequences of the charges and what he was trying to do for them.

To the question of the Arizona Supreme Court, did Brandt fully counsel with each defendant relative to the facts and possible defenses before advising the plea of guilty, Mr. Brandt replied, "Yes, I did." Brandt said, "I advised them to the extent that I believed that they were fully advised as to the possible defenses * * * and I believed that they understood." He further testified, "There was never any indication that they did not understand the nature and consequences of my representation." Almost after every hearing " * * * we sat and discussed it at length."

Brandt said the boys maintained the position, which he thought was true, "that they never formed an exact intent to kill her" but were only going to try to "delay her" until they could take her car and property and get away from her. He explained to them that even if there was a finding of no premeditation that it would be inferred from death resulting from robbery, that this would support a finding of first degree murder.

The possible defense of intoxication on the part of the appellants to the degree they did not know the nature of their acts or could not form the necessary intent to be involved either in the commission of a felony or the premeditated homicide, was considered. Brandt testified, "This was studied by me at length"

and that up to July 16th it was not resolved whether he would take that defense to the jury " * * * or leave it as a mitigating circumstance to be determined by the Court." He decided on the latter procedure.

On cross examination by Kruchten's attorney, Brandt testified he had always talked to the boys together and had explained the possible plea of insanity for either or both of them. Kruchten's drinking problem was gone into and, as to this point, Brandt said he "procured the complete background."

Brandt testified he satisfied himself that the statements of the defendants to the F.B.I. were voluntary, that Kruchten told him at his first interview that his confession was voluntary, and Kruchten's testimony at the Coram Nobis hearing corroborated this conclusion. Kruchten, he said, seemed to be entirely normal, of average intelligence, and acted as though he understood the words he (Brandt) used. He again stated, on cross examination, that he went into the background of each defendant "very carefully" and carefully examined the defense of intoxication.

There was further evidence of Kruchten's knowledge of the nature of the charges against him, and the penalties involved, in the testimony of Judge Nabours at the Coram Nobis hearing when he testified that he interrogated both defendants at the time of their plea as to whether they fully understood the nature and the meaning of the charges placed against them and the meaning of the plea of guilty; each stated that he did. The Judge also asked, among other things, if each defendant understood that the punishment provided by the statutes of the State of Arizona for the charge of murder in the first degree was death or life imprisonment, and each defendant stated that he did.

Judge Nabours' testimony was corroborated by that of Mr. Donald O'Neill, reporter for the Yuma Daily Sun, who stated that Judge Nabours had questioned the defendants individually as to whether they understood that the death penalty could be imposed and that each replied, "Yes".

## CONFLICT OF INTEREST

The consideration of the claim of conflict of interest between Kruchten and Janovic is a part of the overriding contention in this appeal that appellant Kruchten did not receive effective assistance of counsel.

Brandt had discussed the conflict of interest aspect with Janovic's mother, telling her that if there was no conflict he could represent both boys. He later told her in a letter that he detected no possible conflict of interest and testified at the Coram Nobis hearing that he could detect no semblance of a conflict of interest whatsoever existing between the appellants. He further testified that he advised the appellants as to the possible conflict of interest and that he " * * * looked into every possibility of a conflict of interest and asked them specifically the details." He was satisfied from the statements of the appellants to the F.B.I. and the information he had obtained from them and other sources that no conflict of interest existed.

Kruchten testified that he and Janovic did not discuss the details of the case but "we did say that we were both equally guilty we felt."

Brandt told Kruchten's and Janovic's new attorneys, Davis, Minne and Lawrence, when discussing with them possible grounds for appeal, that he had been searching his mind for any possible errors or omissions on his part and that by reason of the fact the statements of the boys were always so similar throughout the proceedings there was a question in his mind, in retrospect, of whether inquiry to the appellants separately would have disclosed they were testifying to an agreed state of facts. He said he had not questioned them separately, and offered to make an affidavit as to that fact, but that he did not say he detected the possibility of conflict " * * * because during the course of my representation I had detected no

possible conflict at all, and none had been shown me to this date where this is a possibility of a conflict between the two boys where they couldn't be both represented by the same counsel." Brandt was positive he had not said he would state, by affidavit or otherwise, that there was any conflict of interest between the appellants or that they should have been represented by separate counsel.

Kruchten urges that Brandt had an agreement with Janovic's parents to plead Janovic guilty, which agreement would have foreclosed Brandt from giving Kruchten's defense independent consideration. · There is substantial evidence that there was no such agreement.

It was contended that Janovic was the "leader" and consequently Kruchten had less moral guilt unless Janovic was "mentally ill", in which case that fact would mean Kruchten, who was not, would be prejudiced, since Janovic, with a mental problem, would have lesser moral guilt. Problems re the admissibility of evidence that Kruchten was the follower are noted by the Arizona Supreme Court at pages 524 and 525 of its opinion in 417 P.2d 510, supra.

■ A report of February 11, 1959, on Janovic's medical record while in the Marine Corps disclosed he was diagnosed as suffering from "emotional instability". He was discharged from the Marines on February 25, 1959. Attorney Brandt, on July 5, 1963, obtained a court order for psychiatric examination for Janovic before plea but the examination was never made because Brandt finally concluded he could use Janovic's Marine Corps medical record to better advantage at a mitigation hearing by reason of the possibility of a current psychiatric examination disclosing Janovic was not incompetent or mentally ill at the time of the plea or at the time of the homicide. This conclusion was largely corroborated by the psychiatrist, Dr. Gregory, who examined Janovic on order of Judge Jones made during the Coram Nobis hearing. The fact Janovic's medical record of several years prior to the date of the offense was used in the mitigation hearing would not necessarily create a conflict of interest between him and Kruchten.

■ It is further contended by Kruchten, as further grounds for his position that there was more culpability on the part of Janovic than himself in that, as stated to the F.B.I., he had been drinking so much he really did not remember how the "ditching" of Sally came up or when it was discussed. In his statement to the F.B.I., Kruchten also said, "We told Sally we were going to go for a walk and maybe climb the mountain but Joe and I intended to knock her out and leave her there." The statement discloses that before making it appellant was advised of his constitutional rights. From this statement it is obvious that Kruchten was well aware, when they went for the walk on the desert, of the agreement which he had with Janovic whereby they intended to leave Sally unconscious on the desert. There is substantial evidence including the details of occurrences before, during and after the homicide, as set forth in Kruchten's statement, to support the conclusion of Brandt that the facts did not support the defense that Kruchten was so intoxicated he could not have had the requisite intent. As stated by the Supreme Court of Arizona in State v. Kruchten, 417 P.2d 510, 520:

"Kruchten argues, however, that his intoxication would have required the submission of manslaughter and second degree murder verdicts. By statute, A.R.S. § 13–132, no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition but intoxication may be taken into consideration in determining the purpose, motive or intent with which the act was committed. Of this statute we have repeatedly held that testimony by a defendant that he had been drinking did not raise an issue to be submitted to a jury where the accused was able to remember the factual details of the offense." [Citing Arizona cases.]

After considering all of the facts and circumstances involved in the case, including the testimony of numerous witnesses over a four-day hearing and the many exhibits filed, Judge Jones found as a fact, following the Coram Nobis hearing, with respect to any possible conflict of interest:

> "2. Both Appellants were fully advised as to a possible conflict of interest relative to their degree of complicity before entering their pleas of guilty.
>
> \* \* \* \* \* \*
>
> "4. The entire record fails to disclose a possible conflict of interest of any kind that required independent legal advice for Appellant Kruchten." [Pg. 514, footnote 2, State v. Kruchten, supra.]

It is to be noted that the thirteen witnesses testifying at the Coram Nobis hearing included both appellants, Judge Nabours, the F.B.I. Agents Downey and Zimmerman, who interrogated and took the statements from the appellants, Mr. Brandt, Mr. Daly, probation officer, and Attorneys Lawrence and Contreras, and Mrs. Janovic, Senior.

The Supreme Court of Arizona and the United States District Court, who reviewed the same evidence considered by the Arizona Supreme Court and held its own hearings, came to the same factual and legal conclusions.

In the circumstances, District Judge Craig properly relied on the determination of the Arizona courts as to the factual issues. Title 28, U.S.C. § 2254 (d); Townsend v. Sain, 372 U.S. 293, 313–318, 83 S.Ct. 745, 9 L.Ed.2d 770. Before making his decision he reviewed the transcript of the testimony of all witnesses testifying at the Coram Nobis hearing, transcript of the mitigation proceedings on July 26, 1963, and all the exhibits before the Judges in those proceedings, and he had every reason to conclude the Coram Nobis hearing, called for by the Supreme Court of Arizona, was a full, fair and adequate hearing within the meaning of said Section 2254(d).

Judge Craig also held a hearing in the Habeas Corpus proceeding before him during which he took the testimony of Kruchten, Janovic, Dr. Thomas Richard Gregory, the psychiatrist who examined Janovic on the order of Judge Jones, Mr. Dwight G. Burd, a Captain at the Arizona State prison, Mr. Henry Ballard, Sergeant, Arizona State prison, and Clemens Schlueter, Chaplain, Arizona State prison and Federal Detention Center.

■ In considering the legal aspects of the conflict of interest claim, we start with the premise that if a conflict of interest actually exists the courts will not weigh or determine the degree of prejudice which may result before granting relief. Glasser v. United States, 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, until an actual conflict is shown to exist or can be reasonably foreseen an attorney may, in good faith, represent both defendants.

This Court, in Lugo v. United States, 350 F.2d 858, 859, said:

> "All the cases cited to us by appellant involved obvious conflicts of interest, and while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest [Glasser, supra], neither can we create a conflict of interest out of mere conjecture as to what might have been shown."

In Juvera v. United States, 378 F.2d 433, 437 (9 C.A.1967), this Court stated:

> "It is argued that it was essential that the trial judge at the commencement of the trial discuss with the defendants the problems relating to representation of the several defendants by one counsel, pointing out to them the disadvantage that might arise should there be conflicting interests to be represented by the attorney. We find this contention without merit for the reasons recently noted by us in Lugo v. United States, 9 Cir., 350 F.2d 858."

Not only does Brandt's testimony at the Coram Nobis hearing evidence his awareness of the problem of potential conflict of interest, but on June 27, 1963, the day after Brandt attempted to enter pleas of guilty of second degree murder for the appellants, which were rejected by the Court, he wrote a letter to Mr. and Mrs. Janovic, with copy to Mrs. Kruchten, wife of the appellant, wherein he stated, in part:

"At the moment, I am representing both boys because there appears to be no antagonistic interests between the two. Their statements indicate an exact degree of guilt. If one is given a life term, the judge could not in good conscience fail to give the other a life term. It is for that reason that I appeared for both of them. The moment there might be any question on this, I will have the court provide Lawrence an independent attorney." State v. Kruchten, 417 P.2d 510, 524, supra.

■■ The fact there were some conflicts in the *evidence* on the issue does not aid the appellant on appeal, if there is substantial evidence in the record to support the findings of the District Court as to no conflict of interest. The burden is on the appellant to establish his right to the relief sought. The Court concludes there was substantial evidence to support the findings of the District Court, that the findings of no conflict of interest between the appellants was not clearly erroneous, and that appellant Kruchten was not denied due process of law.

### LACK OF EFFECTIVE ASSIST-ANCE OF COUNSEL

Under this alleged error, appellant urges, in addition to conflict of interest, "Failure of communication" and "Lack of performance". These points have been included in the discussion hereinabove.

■ The issue is not what counsel should have done to constitute the proper representation of Kruchten considering the case in retrospect after the death sentence was imposed, but rather, whether in the circumstances, as viewed at the time the action was taken, did Kruchten receive effective assistance of counsel. "Ineffective assistance" has been held by this Court to mean conduct by counsel as to be "so incompetent as to make the trial 'a farce or a mockery of justice'," a representation so ineffective as to be "shocking to the conscience of the Court." Rivera v. United States, 318 F.2d 606, 608 (9 C.A.1963); Dodd v. United States, 321 F.2d 240, 243 (9 C.A. 1963); Sanchez v. United States, 398 F.2d 799, 800 (9 C.A.1968).

In Brubaker v. Dickson, 310 F.2d 30, 37 (9 C.A.1962), this Court said that representation by counsel at a trial required

" * * * 'effective aid in the preparation and trial of the case.'

"This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive an accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' Determining whether the demands of due process were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; * * *."

The United States District Court in Janovic v. Eyman, 276 F.Supp. 862, 867, comments on the issue of effectiveness of counsel as to both appellants, as follows:

"Conduct of counsel in this case comes nowhere near the standard for reversal required by the Ninth Circuit. This was a shocking case which presented counsel with few opportunities to present a meritorious defense. He felt that the best way to serve his clients was to plead for mercy from the Court; there had never before been a death sentence on a plea of guilty

in Yuma County. Had the Court acted as expected, his clients indicated they would have been well satisfied with the services rendered by counsel. The Court did not so act. This does not alter the fact that counsel gave effective assistance to the best of his ability. There is no merit to petitioner's contention that his Sixth Amendment rights were violated."

The Supreme Court of Arizona considered the exhaustive evidence taken by Judge Jones at the Coram Nobis hearing and the Findings of Fact and Conclusions of Law of Judge Jones made at the request of the Arizona Court. The specific Conclusion of Law of Judge Jones on the issue of effectiveness of counsel states:

"1. All the facts and circumstances as found did not deprive the Appellants or either of them of effective assistance of Counsel under the Sixth Amendment to the Constitution of the United States." State v. Kruchten, supra, footnote 2, page 514.

At page 521 of its opinion in State v. Kruchten, supra, the Arizona Supreme Court says:

"We conclude that there is nothing now before this Court to support the charge that the representation by Brandt was a farce or a sham or shocking to the conscience. The plain truth is that the unvarnished facts afforded no meritorious defense. Brandt's advice to enter pleas of guilty was founded upon the obvious hope that the court would be merciful in not inflicting capital punishment. It was a strategical decision—how to make the best out of what was a nearly hopeless situation. Strategical decisions are not the kind which courts permit convicted felons to indulge in second guessing." [Citing cases.]

Appellant urges that premeditation was alleged in the Information but not proven. On this issue, the Arizona Supreme Court, at page 516 of its opinion in State v. Kruchten, supra, observes:

"Prior to sentencing and on three different occasions, both Kruchten and Janovic acknowledged striking Sally Ann Pierce on the head with a rock the size of a softball. She was then left unconscious and bleeding to die on the desert. Kruchten and Janovic returned to her automobile and departed in it with her money and other property. The facts of this homicide permit of only one conclusion. As a homicide perpetrated in the course of a robbery, wilfulness, deliberation and premeditation are implied.

" 'The information does not state that the killing with which defendant is charged was committed in the perpetration or attempted perpetration of robbery, but the evidence conclusively shows such to be the fact. It is settled by a great majority of the decisions that evidence of the killing of a human being while in the act of committing robbery supports an indictment or information alleging that the killing was wilful, deliberate, and premeditated, as here alleged. [Citation of cases.] * *

" 'Wilfulness, deliberation and premeditation are implied when killing is committed in the perpetration of, or attempt to perpetrate, any of the felonies named, and all that is necessary to support an information charging wilful, deliberate, and premeditated murder is to prove that the killing was done by the defendant while committing, or attempting to commit, one of such felonies.' Cochrane v. State, 48 Ariz. 124, at 141, 142, 59 P.2d 658, at 665."

■ Judge Craig, as shown by his opinion in Kruchten v. Eyman, 276 F. Supp. 858, supra, thoroughly considered the claims of Kruchten in all their aspects, after conducting his own hearing on the petition for Writ of Habeas Corpus, and determined that appellant Kruchten was not restrained of his liberty in violation of the Constitution or laws of the United States.

This matter was concluded in the trial court prior to the decisions in Escobedo

v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

All of the appellant's specifications of error, and arguments in support thereof, have been considered by this Court, although all have not been specifically mentioned by name in the above opinion. The Court concludes that the Findings of Fact of the District Court are not clearly erroneous, that no mistake has been made by the District Court, and its Order is supported by the evidence. The Order denying petition for Writ of Habeas Corpus is affirmed.