M. Marvin Berger, J.
This case presents a novel question: Must defendants, charged with the commission of the same crime, be represented by separate attorneys before a court may accept identical guilty pleas from each defendant?
May such a plea be accepted, in the face of the possibility that if each defendant had his own lawyer, his counsel might have advised him of the possibility of inculpating his codefendants by exculpating himself? If each defendant is represented by the same counsel, is his plea of guilty an informed waiver of his constitutional rights.
The facts in the instant case required the first question to be answered in the negative, the last two in the affirmative.
Here, four defendants move to withdraw identical pleas of guilty to the charge of possessing weapons —two machetes, three knives and a bludgeon, found in ¡an automobile driven by one of the four. When arrested, the quartet was also charged with unlawful assembly and possessing a pipe containing a small amount of marijuana.
The Legal Aid Society counsel representing all four defendants at arraignment requested that counsel be appointed for three of the defendants under the provisions of article 18-B of the County Law. The application was denied and the matter proceeded to a hearing a week later.
At the hearing, the arresting officers testified that Torres, one of the four defendants, drove the vehicle, that the car was not stolen, and that a foot-long metal rod, possibly part of an exercise bar bell, lay on the front seat between the driver and another defendant. The vehicle was then searched and the machetes and knives were found under the front seat. A pipe containing a ,residual amount of marijuana was discovered under the back seat.
*971 It was testified that the automobile was fourth in a line of six cars, each containing four to six male Hispanics. The defendants were held for trial, and later, another Judge denied a motion to suppress the seized material.
A month after their arrest, the defendants, represented by the same attorney who appeared as their counsel at the hearing, pleaded guilty to the weapons charge (Penal Law, § 265.05) to cover all three offenses. In their attorney’s presence each defendant admitted that the plea was the equivalent of a conviction after trial, denied that he had been coerced or enticed by any promise into entering the plea, and said that he had consulted with counsel.
Bach defendant admitted that he understood that he was being charged with, and pleading guilty to, possession of the bludgeon, machetes and knives.
The month following entry of their pleas, defendants moved to withdraw their pleas and requested assignment of 18-B counsel for three of the four defendants. The basis for the request was an affirmation prepared by an attorney employed by the Legal Aid Society, other than the attorney who had theretofore represented defendants.
The affirmation stated that “ defendants did not understand that the charges against them were based on legal presumptions which could be rebutted by their testimony at trial Furthermore, “ because the charges were based on rebuttable presumptions, there were potential conflicts of interest ” in representation of all four defendants by a single attorney (emphasis supplied).
The defendants do not assert their innocence, but allege that the case against them rested on an inoperative presumption, which might have been challenged successfully, had each defendant been represented separately.
First, as to the flawed presumption, subdivision 2 of section 265.15 of the Penal Law provides that when any of the weapons specified in section 265.05 are found in a stolen car, all the car’s occupants are presumed to possess the weapons. The presumption is narrower in the case of a car that has not been stolen and covers a smaller group of weapons — generally concealable instruments primarily intended for use as weapons — for example, switchblade knives and daggers. Bludgeons and ordinary knives are not enumerated in the limited group of forbidden weapons and, conceivably, may not support the presumption of ownership by all the occupants of the vehicle.
*972 Counsel for the defendant argues that she was unduly hampered in her attempt to advise the defendants that some of them might testify on trial, rehut the presumption, and thus east blame on some other defendant or defendants. In her capacity as attorney for all four defendants, she could not counsel any of them to inculpate another in order to exculpate himself. Thus, defense counsel, in the words of her brief, saw herself “ caught between the conflicting interests of her clients,” unable to render effective assistance and prevented from adequately advising them of the possible options available to them. Her clients, unaware of the possible defenses, could not be said to have made an informed waiver of their rights.
Accordingly the defense asserts the guilty pleas were invalid, and defendants should now be permitted to withdraw them, especially since the People do not claim to have been prejudiced, and separate counsel should now be appointed for three of the four defendants.
Implicit in the defendant’s position is the possibility that, on trial, some of the defendants might claim that they were not the owners of the weapons, thereby rebutting any presumption of ownership, even one of greater strength than the allegedly inapplicable presumption relied upon by the People.
Counsel fails to carry this argument to its logical conclusion —that all of the defendants might attempt to rebut the presumption in the same fashion as an individual defendant without necessarily inculpating a codefendant.
It is undisputed that no weapon was found on the person of any defendant. As occupants of the automobile, all of them were on the same footing. Despite the popular wisdom that the person driving the vehicle or the person in whose immediate vicinity a weapon is found is somehow more likely to be the owner, the presumption of ownership extends to every passenger, including the operator.
As stated in People v. Davis (52 Misc 2d 181, 184 [Shapiro, J.]): “ the presumption applies not only to a situation in which the defendant is actually found in the car with the weapon but to a case where the proof establishes that the defendant and the weapon were at one time in the car together without regard to the location of either the defendant or the proscribed weapon at the time of the defendant’s apprehension. (People v. Anthony, 21 A D 2d 666; cf. People v. Spillman, 309 N. Y. 295.) ”
The right to withdraw a plea rests in the sound discretion of the court (People v. Borge, 40 A D 2d 552).
*973 The leading case of People v. Nixon (21 N Y 2d 338) emphasizes the need for the court accepting a plea of guilty, to be satisfied that the defendant is aware of what he is doing — that the defendant’s decision is a knowledgeable one (People v. Malinowski, 37 A D 2d 662). For, as stated in Boykin v. Alabama (395 U. S. 238, 242-244): “ A plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a cover-up of unconstitutionality * * * What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.”
However, a plea of guilty may not be withdrawn unless there is some claim of innocence, or an assertion that the plea was induced by fraud, coercion or mistake (People v. Wright, 20 A D 2d 857).
The allocution directed to the defendants by the prosecutor, in the presence of the court, establishes that the defendants were not coerced or enticed or misled by fraud into pleading guilty and entered their plea only after consulting their counsel.
The possibility that defendants might escape conviction because the nature of the weapons might have made the operation of the presumption of ownership impossible appears to be an afterthought. Arguably, defense counsel might have driven a plea bargain on terms more advantageous to her clients. In similar situations one defendant might have volunteered to admit ownership and pleaded guilty to the charge, thus exonerating his codefendants.
On the other hand, if defendants had elected to stand trial, all might have been convicted of three charges.
Thus, the plea had advantages for the defendants — advantages which may not now be minimized by contemplating the prosecution’s difficulties in obtaining convictions without the help of a leaky presumption.
There have been other cases in which a guilty plea was not permitted to be withdrawn, despite the difficulty of proving the defendant’s guilt.
For example, in People v. Foster (19 N Y 2d 150) the defendant sought to vacate a plea of guilty to attempted manslaughter in the second degree on the ground that an attempt to commit a crime required intent and that manslaughter was defined in the former Penal Law as a homicide committed without a design *974 to effect death. Thus defendant had pleaded to a nonexistent crime.
The court affirmed judgment sustaining the connection on the ground that the plea was freely taken as part of a bargain struck for defendant’s benefit. The opinion quotes with approval the opinion of Judge Van Voobhis in People v. Griffin (7 N Y 2d 511, 516) that a plea of guilty to a lesser crime “ may be based upon no objective state of facts. It is often a hypothetical crime” and the plea “may relate to a hypothetical situation without objective basis.”
And as stated in People v. Borge (40 A D 2d 552, 553): “Defendant had knowingly and voluntarily bargained for a plea of guilty to the crime of attempted burglary in the third degree and, although the facts admitted by him at the time he pleaded guilty did not make out the crime to which he was pleading, the guilty plea may nevertheless be sustained (People v. Griffin, 7 N Y 2d 511; People v. Foster, 19 N Y 2d 150; People v. Toliver, 29 A D 2d 210.) ”
In People v. Etheridge (29 A D 2d 679, 680 [2d Dept.]) the court states in a memorandum opinion: “ There is no claim of innocence, even on the appeal. Defendant’s only claim is that the People may not now be able to prove him guilty because. the complainant (his wife) would not presently testify against him. The court has held that that is not a sufficient reason to permit withdrawal of a guilty plea (People v. Grant, 28 A D 2d 1090).”
Finally, we have the case of People v. Bertrand (28 Misc 2d 1084, 1085-1086), in which Justice Gassman writes: “Even if a hearing should disclose that the evidence in this case was unlawfully seized in an unconstitutional search, the consequent inadmissibility of such evidence at a trial does not affect the validity of the defendant’s plea of guilty. ‘ The defendant had a right to waive his preliminary examination and to plead guilty upon arraignment even though the State did hot have in its possession evidence upon which he could have been convicted upon a trial ’ (Bartozek v. State, 186 Wis. 64A-646 [1925]) * * * He does not claim on this motion that the admissions made by him in open court were the result of fraud, trickery, deceit, duress or mistake of fact. Nor does he now disclaim or disavow his admission of guilt. In effect, he says: * I admit that I am guilty and that I pleaded guilty voluntarily. However, since then, I discovered that if I had not pleaded guilty, the People could not have established a case ’. * * * After a close examination of the facts and circumstances in *975 this case, I find that the defendant has not advanced convincing grounds for the withdrawal of his guilty plea, taken by the court, with all due respect for the rights of the defendant, and predicated upon his open admission of guilt. (Bartozek v. State, supra; Carr v. State of Indiana, 194 Ind. 162 [1924].) To hold otherwise would sanction and foster the view that the law is a game rather than a diligent attempt to base justice on truth. It would be both unreasonable and repugnant to the ends of justice to allow a defendant, who has freely acknowledged his guilt, to withdraw his plea of guilty upon the sole ground that he lately discovered that some crucial item of evidence is unavailable for use against him. Accordingly the motion is denied. ’ ’
This brings to the fore the question of whether defendants were adequately counseled by but one attorney.
The mere fact that one lawyer represented all four defendants does not itself spell out a conflict of interest. (People v. Quick, 30 A D 2d 561 [2d Dept.].)
In People v. Gonzalez (30 N Y 2d 28) the defendant claimed that the trial court had deprived him of effective assistance of counsel by permitting him to share a retained attorney with his codefendant, citing in support of his position Glasser v. United States (315 U. S. 60); United States v. Hayman (342 U. S. 205) and other cases.
The Court of Appeals, in an opinion written by Judge Jasen, distinguished Glasser and Hayman, stating (pp. 32-33):
“ In all of the cases relied upon by the appellant a persuasive showing of a conflict of interests was made. (Cf. People v. Wilkins, 28 N Y 2d 53.) The holdings are consistent with the rule that has developed that ‘ an appellant must show some conflict of interest between himself and the other defendants represented by his attorney before he can claim successfully that the joint representation deprived him of his right to counsel. ’ (United States v. Bentvena, 319 F. 2d 916, 937 [2d Cir.]; Glasser v. United States, 315 U. S., at pp. 72-76; United States v. Dardi, 330 F. 2d 316, 335 [2d Cir.], cert. den. 379 U. S. 845; Gonzales v. United States, 314 F. 2d 750, 752 [9th Cir.]; Englehart v. Commonwealth, 353 Mass. 561, 562; People v. Dolgin, 415 Ill. 434, 448; cf. People v. Wilkins, 28 N Y 2d 53, 55-56, supra.)
11 But even where such a conflict of interest is found to exist and, as a result, one of the defendants is prejudiced, this does not automatically inure to the benefit of his codefendants, unless they, too, were in some manner harmed by the fact that they *976 were represented by the same attorney. (Kruchten v. Eyman, 406 F. 2d 304; Janovic v. Eyman, 406 F. 2d 314; Campbell v. United States, 352 F. 2d 359; cf. People v. Byrne, 17 N Y 2d 209, 216.) ”
To the same effect are People v. Wilkins (28 N Y 2d 53) and People v. La Mere (39 A D 2d 15 [3d Dept.]).
In People v. Cesare (30 A D 2d 868 [2d Dept.]) the court wrote in a memorandum:
‘ ‘ While it is true that it may be error for the court to proceed with the trial where two or more defendants, whose interests are in conflict, are represented by the same assigned counsel (People v. Powell, 21 A D 2d 789; People v. Sprinkler, 16 A D 2d 705), absent a conflict of interest which interferes with the proper presentation of the defense of one or more of the codefendants the mere fact that the codefendants are represented by the same counsel is not grounds for reversal (Lugo v. United States, 350 F. 2d 858). Such an assignment is not, in itself, a denial of effective assistance of counsel. It is clear that some conflict of interest must be shown before a defendant can successfully claim that the joint representation deprived him of his right to counsel (United States v. Dardi, 330 F. 2d 316, 335).”
In Lugo v. United States (350 F. 2d 858), the defendants, Lugo and Santiago, were convicted of importing and facilitating transport of a narcotic drug into the United States. Each defendant presented an identical defense through the attorney who represented both of them — a disclaimer of knowledge as to how the drugs got into the car — and each defendant supported his codefendant’s account.
The Court of Appeals, in an opinion by Bastían, J., wrote (p. 859): “ absent a conflict of interest which interferes with a proper presentation of the defense of one of the codefendants, the mere fact that both are represented by the same attorney is not grounds for reversal. Gonzalez v. United States, 314 F. 2d 750 (9th Circ. 1963). There has been no showing of any conflict of interest between Lugo and Santiago in this case, nor have we found lany in our review of the record. * * * All the cases cited to us by appellant involved obvious conflicts of interest, and while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest [Glasser, supra], neither can we create a conflict of interest out of mere conjecture as to what might have been shown.”
*977 Again, addressing ourselves to the papers in support of the application, there is no allegation of a conflict of interest between the defendants, but only the assertion of a potential conflict. The assertion by any defendant of nonownership of the weapons found in the car is consistent and congruent with a similar disclaimer by any other codefendant.
Although cognizant of the stature of the authorities cited by the defense, this court is not persuaded of their applicability to the facts in this case and thus may not permit withdrawal of the pleas of guilty. The application is denied and the court will sentence the defendants in the light of their pleas and the pre-sentence reports submitted to the court.