OPINION OF THE COURT
William Holland, J.
The defendant, Hernán Astor, is charged in this indictment with criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]) and criminal possession of stolen property in the second degree (Penal Law, § 165.45, subd 3, [L 1969, ch 354]). The subject matter of both counts involves the same item, to wit, a .32 caliber loaded revolver.
A nonjury trial was conducted before this court on January 23, 1979. At the end of the entire case, defense counsel moved *1085 for a trial order of dismissal of both counts contained in the indictment pursuant to CPL 290.10. In his motion, defense counsel has raised an interesting and novel legal issue revolving around the applicability of subdivision 3 of section 265.15 of the Penal Law (the statutory presumption of the possession of a weapon found in an automobile, as applied to the occupants of a vehicle).
FINDINGS OF FACT
Police Officers Michael Keane and Richard Biller were on patrol in a marked police vehicle, on the morning of October 3, 1977. At approximately 2:10 a.m., they observed a green 1966 Oldsmobile proceed through a steady red light located at the corner of 173rd Street and Southern Boulevard. (The vehicle contained the defendant, who was the driver, and a passenger later identified as Juan Villalobas.) The two officers pulled the subject vehicle over at the vicinity of 174th Street and Southern Boulevard.
Police Officer Keane approached the defendant, and requested his driver’s license and car registration. The defendant produced a driver’s license in the name of Hernán Astor and a car registration in the name of Juan Perez. Both documents listed the same address of 2085 Valentine Avenue, Bronx, New York-Apt. 6-J.
Officer Keane then asked the defendant who Juan Perez was. The defendant did not respond. The officer repeated the question and this was again met with no response. Then Officer Keane asked the passenger, Mr. Villalobas, if the defendant could speak English. Mr. Villalobas responded in the negative. Then Officer Keane asked Mr. Villalobas to translate his question (as to the identity of Juan Perez) into Spanish for the defendant. Mr. Villalobas said something in Spanish to Mr. Astor but the defendant did not respond. The officer asked Mr. Villalobas to repeat the question in Spanish again, and again the defendant remained silent.
At this point, deciding that further investigation was warranted and following normal police procedures, Officer Keane climbed into the back seat of the Oldsmobile and directed Mr. Astor (through Mr. Villalobas) to proceed to the 41st Precinct house. (The purpose for going to the precinct house was to run a check on the registration of the automobile against the VIN plate number through the police computer.) Officer Biller followed behind the Oldsmobile in his police car.
*1086 On reaching the 41st Precinct, both cars were parked and the two officers along with Mr. Astor and Mr. Villalobas entered the station house. The officers stopped at the front desk to speak with a Lieutenant Marcum and to inform him of their investigation. After this, the officers took Mr. Astor and Mr. Villalobas to a processing room located near the front desk, where they were told to sit and wait. Then the officers proceeded to the clerical office, where the computer was located. One of the officers punched the necessary information into the computer. After waiting a period of time, they received a printout from the computer. The officers then went out of the station house and back to their patrol car to get a flashlight.
Officers Keane and Biller then proceeded to the 1966 Oldsmobile. Officer Biller opened the left front door of the car. He bent down with the flashlight in an attempt to read the VIN number off the door frame and to compare it with the information listed on the printout sheet. When he did this, Officer Biller discovered a gun loaded with six live rounds, hanging from a wire under the dashboard, located between the steering column and the ashtray. Both officers then went back into the station house and placed Mr. Astor and Mr. Villalobas under arrest. A later check revealed that the gun belonged to the Continental Firearms Corporation and the gun was reported stolen. (This was stipulated to by both sides at trial.)
CONCLUSIONS OF LAW
Defense counsel contends that the presumption under subdivision 3 of section 265.15 of the Penal Law cannot be applied under the facts and circumstances of this case.
The statute reads: "The presence in an automobile * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found”. (Penal Law, § 265.15, subd 3.)
The main issue to be decided on this motion is whether Mr. Astor could have been considered to have been "occupying” the 1966 Oldsmobile when the .32 caliber revolver was found for subdivision 3 of section 265.15 of the Penal Law to apply. Because without this presumption of possession, there was clearly no other evidence adduced at trial to indicate any actual possession of the gun by Mr. Astor. (Officer Keane testified that during his ride in the back seat of the Oldsmo *1087 bile to the 41st Precinct [a distance of some 10 to 11 blocks], he never observed the .32 caliber gun hanging from a wire under the dashboard.) He also testified that he never saw the defendant in actual physical possession of the weapon.
The People in opposition to defense counsel’s motion cite the case of People v Davis (52 Misc 2d 181). In this case, a police officer had observed the defendant alighting from a car, and after a brief chase, apprehended him. Meanwhile, shortly before the car (in which the defendant had been riding) had come to a halt, the officer had observed someone in the car throw an object out of the window. The object was later discovered to be a sawed-off rifle. The court ruled that the statutory presumption of possession (formerly Penal Law, § 1899) could still be applied to this defendant, even though the defendant and the rifle were not found in the car at the same time. Citing the case of People v Anthony (21 AD2d 666) for support, the court stated that: "where the police officer saw the defendant leave the automobile, kept the automobile under observation and then saw a pistol inside of it before anyone or anything left the automobile, he, the defendant, was 'under the [presumption] statute, found in the automobile "at the time” the pistol was found there’ ”. (People v Davis, supra, p 184.) Thus the defendant was considered to be "constructively” occupying the car at the time the weapon was found, so that the statutory presumption could still apply (see, also, People v Hayden, NYLJ, Oct. 27, 1978, p 14, col 3; People v De Leon, 77 Misc 2d 969).
Clearly, the facts in these cases are distinguishable from the case here. More on point is the case of People v Crenshaw (202 Misc 179). Here, after the police had stopped the defendant’s car, the defendant was placed in a police car, while another officer drove the defendant’s car along with his companions to the 41st Precinct station house. The defendant and his companions were then taken inside the precinct and questioned for a period of 40 minutes. Meanwhile, defendant’s car had been left unattended and unlocked outside the station house. After the questioning had been completed, the police went outside to conduct a search of defendant’s car, and there discovered a .45 caliber automatic pistol.
The court dismissed the indictment against the defendant. Judge Joseph, in his opinion, stated that the rule of constructive occupancy: "would be restricted to and become operable only in relation to persons who were known occupants of an *1088 automobile immediately preceding the finding of the prohibited weapon therein, irrespective of the locale of their arrest, or the time intervening therefor, provided the automobile in question has been under continuous custody or surveillance during the interval of the flight of the accused and the finding of the weapon, as to make such constructive occupancy uninterrupted and directly connecting the known occupants with the found prohibited weapon.” (People v Crenshaw, supra, p 183.)
Judge Joseph held that since the defendant and his companions had remained in the station house for a period of 40 minutes, during which time the defendant’s car had been left unattended and unlocked, the statutory presumption of possession could not apply. The defendant could not have been considered "constructively” occupying the car (see People v Spillman, 309 NY 295; People v Tropiano, 294 NY 940; People v Bennett, 47 AD2d 322).
I find that the defendant, Hernán Astor, under the facts and circumstances of this case, also could not have been considered to have been occupying the Oldsmobile, either actually or constructively, at the time the .32 caliber revolver was found by Officer Biller. In People v Crenshaw (supra), there was a time gap of 40 minutes when the car was left unattended and unlocked. However, in the case before me, there was no evidence at trial as to what period of time the two officers, Mr. Astor and Mr. Villalobas, were in the 41st Precinct. However, by tracing the police officers’ movements from the time they reached the 41st Precinct until the time they discovered the gun in the Oldsmobile, it is clear that the time period was certainly significant. After parking the Oldsmobile and the police car, the officers proceeded into the station house. They stopped at the desk to inform a Lieutenant Marcum of their investigation. There was no testimony at trial as to how long this conversation took. The court cannot speculate as to what was said between the officers and the desk lieutenant concerning their entire investigation of this case. They then took Mr. Astor and Mr. Villalobas to a processing room and told them to wait. The officers then went to the clerical office where the computer was located. One of the officers punched in the information into the computer, and after waiting a period of time, they received the printout sheet. (Neither officer could remember how long it took for the information to come back on the printout sheet on this occasion. Officer Keane testified *1089 that it normally takes anywhere from one minute to five minutes to get the printout. Officer Biller testified that sometimes the information comes back relatively fast and sometimes it takes a relatively long time.) Officers Keane and Biller then took the printout and went back outside to their patrol car to get a flashlight. Then they went to the Oldsmobile and in the process of checking the VIN number, found the gun.
During this entire time period, the Oldsmobile was left unattended. There was also testimony that Mr. Astor took the car keys into the station house with him when he first entered the precinct. Since Officer Biller testified that he opened the left front door of the Oldsmobile with no problem (to check for the VIN number), it can be reasonably inferred that the Oldsmobile was also left unlocked as well as unattended.
There was also no testimony elicited at trial showing whether or not the defendant, Hernán Astor, and Juan Perez (the name listed on the car registration) were in fact one and the same person. Thus, this court cannot conclude that Mr. Astor was even the owner of this Oldsmobile, where the gun was found.
Finally, the People have set forth the argument, that logically, no one could have known that this police encounter with Mr. Astor would take place. Therefore, no one could have been waiting near the 41st Precinct to "plant” this weapon in the Oldsmobile during the time interval when everyone was in the police station.
However, this court in deciding the motion before it, cannot act as a detective, sage or soothsayer, or make guesses or speculations as to what may or may not have happened during the time period in question. Where two inferences may be drawn from the evidence, one consistent with guilt and one consistent with innocence, the defendant is entitled to the inference of innocence.
In conclusion, the time interval when the two police officers were in the 41st Precinct, and the fact that the Oldsmobile was left unattended and unlocked during this interval, clearly broke the "chain of occupancy” linking the defendant with the .32 caliber revolver found in the car. Therefore, the defendant could not have been considered to have been occupying the car, either actually or constructively, when the weapon was found. So under a strict and literal interpretation, the statutory presumption of possession of this weapon under subdivi *1090 sion 3 of section 265.15 of the Penal Law cannot be applied to Mr. Astor in this case.
There being no other evidence of possession of this weapon by Mr. Astor in this case, the trial evidence is not legally sufficient to establish either count as contained in this indictment. Therefore, the motion for dismissal of both counts in the indictment at the end of the entire case, pursuant to CPL 290.10 is granted.